STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Petitioner,

v.

Gloria J. BREKKE, Respondent.

State Farm Mutual Automobile
Insurance Company,
Petitioner,

v.

Clinton Shaffer and Laura
Shaffer, Respondents.

No. 03SC585, 03SC719.

Supreme Court of Colorado,
En Banc.

Dec. 6, 2004.

As Modified on Denial of Rehearing
Jan. 31, 2005.

178

Faegre & Benson, LLP, Michael S. McCarthy, Marie E. Williams, Denver, for State Farm Mutual Automobile Insurance Company.

Gradisar, Trechter, Ripperger, Roth & Croshal, James M. Croshal, Pueblo, for Gloria Brekke.

William Muhr, LLP, William Muhr, David A. Harper, Colorado Springs, for Clinton & Laura Shaffer.

Seaman, Giometti & Murphy, P.C., Gregory R. Giometti, Denver, David S. Cantor, Esq., Littleton, for Amicus Curiae Colorado Defense Lawyers Association.

Roberts, Levin & Patterson, P.C., Bradley A. Levin, Laura E. Schwartz, Denver, for Amicus Curiae Colorado Trial Lawyers Association.

MARTINEZ, Justice.

In this opinion, we consolidate and address the appeals from two court of appeals' decisions, *Brekke v. State Farm Mut. Auto. Ins. Co.*, 81 P.3d 1101 (Colo.App.2003), and an unpublished case, *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 02CA2274, 2003 WL 22113741 (Colo.App. Sept. 11, 2003). We consider how an insurance provider may participate in tort litigation between its insureds and uninsured motorists who injured the insureds.

In these cases, two individuals purchased uninsured motorist coverage (UM coverage) from State Farm Mutual Automobile Insurance Company (State Farm). They were injured in accidents with uninsured motorists and sued both State Farm and the uninsured motorists who had caused their injuries. The uninsured motorists failed to appear or answer the complaints, but State Farm appeared and demanded a jury trial both on the insureds' claim that State Farm should have paid under their UM coverage and also on the insureds' claim that the uninsured motorists had negligently caused injury to them.

The district courts conducted default judgment hearings on the negligence claims to determine the liability and damages of the uninsured motorists and allowed State Farm to participate as a party adverse to its insureds. State Farm appealed.

In its appeals, State Farm challenged the district courts' decisions to deny jury trials on the negligence claims against the uninsured motorists. State Farm claimed that its contractual provision that the liability of the uninsured motorist must be determined in an "actual trial," and its request for a jury trial under C.R.C.P. 38, required the district courts to hold a jury trial on the negligence claims against the uninsured motorists. The court of appeals affirmed the actions of the trial courts. State Farm successfully petitioned for certiorari.

We determine that the "actual trial" clauses in the insureds' UM contracts, which attempt to preclude default judgment against uninsured motorists from effectively establishing liability, violate public policy. As we explain in the body of the opinion, UM cover-

age mandated by section 10–4–609, C.R.S. (2004) is diluted if an insurance company contractually prohibits a default judgment from establishing the liability of an uninsured motorist.

We next consider State Farm's role in the negligence claims filed by the insureds against the uninsured motorists. We first distinguish the negligence claims against the uninsured motorists from the contract claims against State Farm and hold that State Farm had the right to a jury trial on its contract claims.

Regarding the negligence claims, we examine the reciprocal duties owed by State Farm and its insureds, and how the litigation is affected by the public policy underlying UM coverage in Colorado. We determine that the district court must take into consideration the unique relationship between the insured and insurance provider and balance the insurance provider's duties to the insured and the insured's right to undiluted UM recovery against the interest of the insurance provider in receiving a fair hearing on its legitimate defenses. While the insurance provider may participate in the tort litigation, its participation must be no more extensive than necessary to preserve that balance.

Balancing the duties and rights in these cases we conclude that State Farm did not allege facts that justify a role greater than the role it was allowed by the district courts in the default damages hearings. Consequently, the district courts did not abuse their discretion when the courts denied State Farm a jury trial on the negligence claims in either case. However, because the district court in *Brekke* entered judgment against State Farm on the negligence claim against the uninsured motorist, effectively treating State Farm as a defendant on that claim, we conclude the district court abused its discretion.

## I. Facts and Procedure

### A. Brekke

The first insured, respondent Gloria Brekke (Brekke), was injured in a hit-and-run accident with a vehicle owned by uninsured motorist Garfield Gus Garcia (Garcia) in September, 1995.

Between 1995 and 1998, however, Brekke and State Farm could not reach settlement on the UM claim. Therefore in September of 1998, almost three years later, Brekke filed suit against Garcia and State Farm.

Brekke's complaint initially included two causes of action, the first alleging the negligence of Garcia, and the second alleging that Defendant State Farm should have paid under its UM coverage for injury caused by Garcia's negligence.

Although Garcia was served with the summons and complaint, he never appeared or filed an answer. State Farm filed an answer and demanded a jury trial on all issues.

Brekke moved for a default judgment against Garcia a year after the suit was initiated, requesting actual and punitive damages.

A few days after the district court had entered a default on Garcia's liability, State Farm filed a response conceding that it was only challenging damages and contending that the default entered against Garcia did not bind State Farm.

The district court denied State Farm's request that the default judgment against Garcia not bind it, but allowed State Farm to contest the amount of damages it would be awarding against Garcia.[1]

State Farm next argued that its contract prohibited the default judgment against Garcia from binding State Farm. State Farm pointed to language in its contract that required issues of liability and damages to be determined as "the final result of an actual trial and an appeal, if an appeal is taken." State Farm contended that this contract language required a jury trial on damages. It therefore asked the court to reconsider its

---

1. Soon after the right to contest damages in a hearing was granted, Brekke asked for and received the right to amend her complaint against State Farm by adding new causes of action including breach of the covenant of good faith and fair dealing by State Farm and willful and wanton breach of contract with treble damages.

determination that the default judgment against Garcia would bind State Farm.

Alternately, State Farm contended that since it made a demand under C.R.C.P. 38 for a jury trial and it was a co-defendant with Garcia, the court's denial of its request deprived State Farm of its statutory right to a jury trial.

The district court denied State Farm's request for a jury trial. First, it held that Garcia had never made a demand for a jury trial on the issue of his negligence and State Farm had waived any rights to a jury trial on the issue of Garcia's liability for negligence through its prior pleadings. Second, on the issue of damages, the district court held that State Farm's contractual language did not require a jury trial. After noting that trial by jury was not constitutionally required in Colorado civil cases, the district court determined that a hearing to the court would adequately protect State Farm's interests in the damages to be assessed against Garcia.

The default judgment damages hearing took place in February of 2001. State Farm contested damages, calling its own witnesses and cross-examining Brekke's witnesses. Following the hearing, the district court entered judgment against both defendants for damages and interest totaling $288,652. State Farm timely appealed.

In its opinion, the court of appeals held that State Farm's contractual language implicitly waived the right to a jury trial on the negligence claim against Garcia and that State Farm received a fair and adequate opportunity to protect its interests through its participation in the damages phase of the default judgment hearing. *Brekke v. State Farm Mut. Auto. Ins. Co.*, 81 P.3d 1101, 1102–03 (Colo.App.2003). The court of appeals reasoned that if it interpreted the contractual language to require a jury trial, such an interpretation would violate public policy because it would resolve the dispute in the most inefficient and expensive way possible. *Id.* at 1104.

We granted certiorari.

## B. Shaffer

The second insured, respondent Clinton Shaffer (Shaffer), was involved in an auto accident with uninsured motorist Jordan Rodriguez (Rodriguez) in August 1996. After three years, during which Shaffer and State Farm could not reach an agreement, Shaffer filed suit in October of 1999 against Rodriguez and State Farm.

Shaffer filed negligence claims against Rodriguez and claims based on the UM contract against State Farm.

As in Brekke's case, the uninsured motorist Rodriguez never appeared or answered the complaint. State Farm answered, denying all Shaffer's claims, pleading affirmative defenses and requesting a jury trial on all issues.[2] Subsequently, Shaffer moved for default judgment against Rodriguez and requested damages of $450,000.

State Farm opposed the default judgment and reiterated its demand for a jury trial. In the alternative, State Farm requested that the default judgment be entered only against Rodriguez and that damages be determined in a jury trial.

The court denied State Farm's request to stay the default judgment. The court held that State Farm's potential interest in the default judgment against Rodriguez did not preclude default judgment against Rodriguez, but allowed State Farm to participate in the damages hearing.

State Farm filed a motion for reconsideration, raising the same "actual trial" language it raised in Brekke's case, and argued that State Farm could not be contractually bound by a default judgment against Rodriguez.

After the district court had denied State Farm's motion and set the case for a hearing on damages, State Farm argued that it had a statutory right to a jury trial. The district court disagreed.[3]

---

2. We also note that State Farm cross-claimed against Rodriguez, indicating State Farm believed it also had a negligence claim against Rodriguez based on the allegations made by Shaffer in his complaint.

3. In August of 2001, State Farm unsuccessfully petitioned this court pursuant to C.A.R. 21 to stay entry of the default judgment against Rodriguez.

At the hearing on damages, State Farm contested the damages and cross-examined Shaffer's witnesses on the extent of Shaffer's injury. After the hearing on damages, the district court determined the damages against Rodriguez in the amount of $537,-000 [4] and reaffirmed that the contract claims against State Farm were reserved for later jury trial.

The court determined that the judgment against Rodriguez was final for purposes of appeal and held that the claims against State Farm arose from different facts sufficiently independent that the order against Rodriguez was appealable.

State Farm first filed a C.R.C.P. 60 motion for relief from a judgment. When the motion was denied, State Farm appealed.

In an unpublished opinion, the Court of Appeals relied on its *Brekke* decision and used the same reasoning to affirm the trial court's disposition of the case involving State Farm and Shaffer. *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 02CA2274, 2003 WL 22113741 (Colo.App. Sept. 11, 2003).

We granted certiorari.

## II. Legal Analysis

We granted certiorari in these two cases to consider the effect of the "actual trial" clause in Brekke's and Shaffer's UM contracts and whether jury trials under these circumstances would violate public policy.[5]

■ We apply a *de novo* standard of review to examine whether the "actual trial" clause in the UM contracts are contrary to public policy. *State ex rel. Salazar v. The Cash Now Store, Inc.*, 31 P.3d 161, 164 (Colo. 2001).

We conclude that the "actual trial" clause is unenforceable because it violates public policy in the same manner as did the "trial de novo" clause in *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 350 (Colo.1998), and the "consent to sue" clause in *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 489 (Colo.1998).

Turning to the issue of whether other actions in the litigation taken by State Farm might have invoked the right to a jury trial, we examine the role of the insurance provider in litigation by its insured against an uninsured motorist. We determine that district courts must balance the insurance provider's duties and the right of the insured to undiluted UM coverage against the interest of the insurance provider in receiving a fair hearing on its legitimate defenses. As such, the trial court must determine the extent of participation by an insurance provider in the tort litigation on a case-by-case basis, subject to review for abuse of discretion. *Cf. Breeden v. Stone*, 992 P.2d 1167, 1176 (Colo.2000);

4. These damages included: $35,000 in loss of consortium for Mrs. Shaffer, $150,000 in non-economic damages to Mr. Shaffer, $177,000 in economic damages to Mr. Shaffer, and $175,000 for physical impairment to Mr. Shaffer plus costs and both pre- and post-judgment interest.

5. In *State Farm Mut. Auto. Ins. Co. v. Brekke*, 2004 WL 1152789 (Colo. Jan.12, 2004), we granted certiorari to consider the following two issues:

1. Whether the court of appeals erred by holding that State Farm implicitly waived its right to a jury trial based upon an inference drawn from the absence of any language in State Farm's insurance policy expressly guaranteeing a jury trial in litigation with its insured, and notwithstanding policy language requiring that contract benefit disputes be resolved on the basis of "an actual trial."

2. Whether the court of appeals misconstrued applicable precedent in opining that it would violate public policy for an insurance company to receive a jury trial in an action brought by its insured under a policy for uninsured motorist benefits.

In *State Farm Mut. Auto. Ins. Co. v. Shaffer*, 2004 WL 296969 (Colo. Feb.17, 2004), we granted certiorari to consider the following two issues:

1. Whether the court of appeals erred by relying on the decision in *Brekke v. State Farm Mut. Auto. Ins. Co.*, 81 P.3d 1101 (Colo.App.2003), and holding that State Farm implicitly waived its right to a jury trial based upon an inference drawn from the absence of any language in State Farm's insurance policy expressly guaranteeing a jury trial in litigation with its insured, and notwithstanding policy language requiring that contract benefit disputes be resolved on the basis of "an actual trial."

2. Whether the court of appeals erred by holding that an uninsured motorist's default eliminates State Farm's right to a jury trial on the issue of damages caused to a State Farm policyholder by the uninsured motorist.

*Draper v. School Dist. No. 1,* 175 Colo. 216, 218, 486 P.2d 1048, 1049 (1971).

In Brekke's and Shaffer's cases, neither court abused its discretion when it only allowed State Farm to contest damages as an adverse party in the default judgment proceeding by Brekke against Garcia and by Shaffer against Rodriguez. In Brekke's case, however, the district court did abuse its discretion when it entered judgment against State Farm on the negligence claim against Garcia.

## A. "Actual Trial" Clause

■ State Farm argues that its UM contracts with Brekke and Shaffer require that for any judgment against an uninsured motorist to bind State Farm, it must be obtained in a full jury trial and not by default. The contracts both provide that if State Farm and its insured cannot reach agreement on a claim, the insured is required to (a) file a lawsuit against the uninsured motorist and State Farm, (b) send a copy of the summons to State Farm, and (c) secure a judgment in that action that is "the final result of an actual trial and an appeal, if an appeal is taken." In determining whether this "actual trial" clause violates public policy, we first examine the general public policy of section 10–4–609 and how it prevents contractual language from restricting the effect of judgments and arbitration orders. We conclude that the "actual trial" clause is unenforceable because it violates public policy.

Colorado's statute mandating insurance protection against uninsured motorists was adopted by the General Assembly in 1965. *Motor Vehicle Financial Responsibility Act,* ch. 91, sec. 2, 1965 Colo. Sess. Laws 333, 334 (codified as amended at section 10–4–609, C.R.S. (2004)). The statute addresses the availability of insurance protection against loss caused by financially irresponsible mo-

torists and forms the basis for this court's jurisprudence on UM coverage:

[I]t is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.

*Id.* sec. 1, at 333 (codified as amended at section 42–7–102, C.R.S. (2004)); *see also Passamano v. Travelers Indem. Co.,* 882 P.2d 1312, 1319–22 (Colo.1994) (discussing the legislative history and public policy behind UM coverage).

■ UM coverage protects motorists from the financial irresponsibility of those who do not purchase mandatory motor vehicle insurance. *Alliance Mut. Cas. Co. v. Duerson,* 184 Colo. 117, 124, 518 P.2d 1177, 1181 (1974). Insured motorists have the right to recover compensation for loss caused by an uninsured motorist in the same manner that recovery would be permitted for a loss due to an insured motorist. *Duerson,* 184 Colo. at 124, 518 P.2d at 1181. We have regularly reaffirmed this understanding of the extent of coverage required by the public policy behind section 10–4–609. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Nissen,* 851 P.2d 165, 168 (Colo.1993); *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007, 1010 (Colo.1992); *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 61 (Colo. 1990).

The public policy behind section 10–4–609 has established a foundation for preventing the dilution of UM coverage, including: protection against certain setoffs from other sources of payment,[6] protection against a scope of coverage narrower than that of the related liability policy,[7] and protection if an otherwise-insured vehicle is rendered unin-

---

6. *Newton v. Nationwide Mut. Fire Ins. Co.,* 197 Colo. 462, 468, 594 P.2d 1042, 1046 (1979) (PIP setoff); *Barnett v. American Family Mut. Ins. Co.,* 843 P.2d 1302, 1305 (Colo.1993) (social security disability payment setoff).

7. *Aetna Cas. and Surety Co. v. McMichael,* 906 P.2d 92, 104 (Colo.1995) (UM/UIM coverage

must be provided to the same class of persons covered under the liability provision of the policy); *DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167, 175–76, (Colo.2001) (class of persons covered, rather than vehicle occupied at the time of injury controlling for UM coverage purposes).

sured by factual circumstances.[8] Most relevant to our current consideration of section 10–4–609's public policy is its application to UM contract clauses that attempted to prevent judgments or arbitration orders from being enforced against the insurance providers.

In *Huizar*, the insurance policy included a "trial de novo" clause which provided that if an arbitration award was greater than $25,000, either party could demand to re-litigate the matter in a regular trial. 952 P.2d at 344. We held that this clause was void as against public policy. *Huizar*, 952 P.2d at 350. We reasoned that forcing an insured to re-litigate a matter that had already been determined via arbitration violated public policy by diluting the insured's ability to have a speedy resolution for her UM claim and undermining the state's public policy in favor of arbitration as a form of dispute resolution. *Id.* at 348–49. The "trial de novo" clause reduced the value of settlements and recoveries under the UM policy by adding the expense of a second litigation. *Id.* at 348.

In *Peterman*, a "consent to sue" clause specified that the insurance provider did not agree to be contractually bound by a judgment against an uninsured motorist unless the provider had consented in writing to the insured filing suit against the uninsured motorist.[9] *Peterman*, 961 P.2d at 489. The "consent to sue" clause was unenforceable because it forced the insured to re-litigate matters that had been determined by the court and therefore diluted the insured's UM insurance coverage. *Id.* at 492–93.

Our reasoning in both *Huizar* and *Peterman* focused on the dilution of coverage resulting from forcing insureds to traverse undue procedural hurdles and re-litigate matters in order to recover under their UM coverage. The "actual trial" clause in these cases also dilutes UM coverage.

■■■ UM coverage is diluted because the insured may not obtain a default judgment. As a general rule, a default judgment has the same effect as final judgment after a formal trial. 46 Am.Jur.2d *Judgments* § 265 (2004); *Werb v. D'Alessandro*, 606 A.2d 117, 119 (Del.1992); *cf.* C.R.C.P. 54 and C.R.C.P. 55. A final judgment ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding. *Moore & Co. v. Williams*, 672 P.2d 999, 1002 (Colo.1983); *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n. 2 (Colo.1982); *D.H. v. People*, 192 Colo. 542, 544, 561 P.2d 5, 6 (1977); *Stillings v. Davis*, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965). A final judgment legally entitles a plaintiff to collect money damages from an uninsured motorist. C.R.C.P. 58.

Section 10–4–609 requires that an insured be "legally entitled to recover damages from owners or operators of uninsured motor vehicles" in order to invoke UM coverage. In *Peterman*, we rejected the argument that a clause in the insurance policy prevented an insured from using a default judgment against the uninsured motorist as a basis for its claim against the insurance provider. The "failure of the defendant to appear in no way undermines the validity of the judgment or the nature of the issues resolved by the judgment." *Peterman*, 961 P.2d at 494. Otherwise the insured would have been prejudiced if forced to commence and complete yet another proceeding to prove liability and damages. *Id.*

Likewise, in these cases, although State Farm participated in the litigation, the "actual trial" clause would have required Brekke and Shaffer to re-litigate the same issues decided in the default judgment or would have prevented them from obtaining the default judgment. They would be forced to

---

**8.** *Morgan v. Farmers Ins. Exchange*, 182 Colo. 201, 205, 511 P.2d 902, 905 (1973) (UM coverage properly invoked when the tortfeasor was rendered uninsured by the insolvency of its insurer); *State Farm Mut. Ins. Co. v. Nissen*, 851 P.2d 165, 169–70 (Colo.1993) (UM coverage properly invoked when the insured who was injured by her own insured vehicle while it was being stolen—since under her policy the car thief lacked per-mission to drive her vehicle and therefore was not covered by her insurance).

**9.** The clause stated: "We are not bound by any judgment against any person or organization obtained without our written consent." *Peterman*, 961 P.2d at 489.

incur additional expenses, such as witness fees, attorney fees, and other costs of presenting a case, as well as an unquantifiable hardship of prolonging a final resolution of the case. *See Huizar,* 952 P.2d at 348. Such an outcome would allow State Farm to needlessly demand that a full trial be held on claims that could have been decided in the default judgment proceeding, violating section 10–4–609's public policy. *See id.*

■ In conclusion, the "actual trial" clause in Brekke's and Shaffer's UM contracts dilutes, conditions, and limits statutorily-mandated UM coverage as did the "consent to sue" clause in *Peterman* and the "trial de novo" clause in *Huizar.* Enforcing this clause to require a jury trial in either case would prejudice the insureds just as the insured was prejudiced by the possibility of re-litigation in *Peterman.* 961 P.2d at 494. Accordingly, we hold the "actual trial" clause is unenforceable because it violates public policy.[10]

### B. State Farm's Role in the Litigation

State Farm argues that its jury demand under C.R.C.P. 38 should have been granted by the trial court with regard to determination of liability and damages for the uninsured motorists. State Farm cites *Whaley v. Keystone Life Ins. Co.,* 811 P.2d 404, 405 (Colo.App.1989), to argue that once a Rule 38 request is made, only the grounds found in C.R.C.P. 39 may be cited in denying that request. Implicit in this argument is State Farm's position that it was a co-defendant on the negligence claims against the uninsured motorists. To resolve this issue, we must inquire into State Farm's proper role in the tort litigation between its insureds and the uninsured motorists who injured them.

■ We determine first that the contract claims and the tort claims in the litigation are legally distinct and hold that State Farm has the right to a jury trial with respect to its contract claims.

We then look to State Farm's role in the tort claim litigation. The reciprocal duties of the insurance provider to act in good faith in investigating the claims made by its insured and the insured to cooperate and provide information to the insurance provider contrast with the rights of parties in ordinary civil litigation. We conclude that the insurance provider occupies a unique role and may not act as a co-defendant in the tort litigation, but should be allowed limited participation in the tort litigation, as suggested by other state courts that have addressed the issue. We adopt a case-by-case analysis for determining the role of the insurance provider in which we use principles from *Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223, 231 (Colo.2001), to balance the insurance provider's duties to the insured and the right of the insured to undiluted UM coverage against the interest of the insurance provider in a fair hearing on its legitimate defenses.

Both Brekke's and Shaffer's cases involved two legally distinct types of claims. First, in tort claims, Brekke and Shaffer each alleged that the respective uninsured motorist negligently caused a motor vehicle accident in which they were injured. Second, Brekke and Shaffer alleged that State Farm, their provider of UM insurance, breached its con-

---

10. We note that in these cases, State Farm expressly argues that "actual trial" means "jury trial."

If we began our own analysis by considering the meaning of "actual trial," we would likely conclude that it is an ambiguous term. As an Indiana court observed, "[o]ne could interpret 'actual trial' to ... require a contested and adversary trial. However, one could also interpret [this term] to require that the amount of obligation be determined by the court when the litigants and insurance company cannot reach an agreement." *Smithers v. Mettert,* 513 N.E.2d 660, 664 (Ind.App.1987).

Ambiguous contractual provisions that are reasonably susceptible to different meanings are construed against the insurance provider and in favor of providing coverage to the insured. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). Thus we would be required to construe "actual trial" against State Farm and in favor of Brekke and Shaffer.

Had we begun by interpreting the "actual trial" clause, we would nonetheless find it necessary to continue to analyze these cases by considering whether the term violated public policy and the proper role of the insurance provider in the litigation by its insured against the uninsured motorist.

tract with them by failing to pay for damages as required under section 10–4–609.

These tort and contract claims are both uniquely related and legally distinct. The claims are related because if the negligence claims are successfully brought to judgment by the insured, the liability established against Garcia and Rodriguez makes Brekke and Shaffer "legally entitled" to damages, a major element of the contract claim against State Farm. Nonetheless, an examination of the nature of each of these claims makes clear that the claims are in point of fact legally distinct.

Regarding the negligence claims, Garcia's and Rodriguez's liability flows from the allegations in tort that Garcia injured Brekke and Rodriguez injured Shaffer in the course of their respective negligent behavior. Once judgment was entered against Garcia and Rodriguez, Brekke and Shaffer had the right to execute judgment and collect damages from these two defendants. *See* §§ 13–52–102 and 13–52–107, C.R.S. (2004). Nothing in Brekke's and Shaffer's legal rights against Garcia and Rodriguez upon judgment would change if Brekke and Shaffer had not been insured by State Farm.

Regarding the contract claims, State Farm's liability flows from its contract with Brekke and Shaffer. Although Garcia's and Rodriguez's liability is a major element of this contractual liability, other elements may be part of this claim, such as whether Brekke and Shaffer are "insureds" under the policy, whether their policies were in effect at the time of the accident, and whether other exemptions or exclusions under the policy applied.

Because the contract claims are legally distinct from the negligence claims, State Farm's role in each of the claims should be examined separately.

 In the contract claim litigation, State Farm was a defendant. Brekke's and Shaffer's complaints alleged that State Farm had the duty to pay under their contract for UM insurance but failed to pay. It is axiomatic that a defendant as a party to a civil action may request a jury trial. § 13–2–108, C.R.S. (2004); C.R.C.P. 38. Although we realize that much of the dispute in uninsured motorists litigation turns on the tort litigation with the uninsured motorist and there is little left to litigate as part of the contract claim once the uninsured motorist's liability has been determined in the default proceeding, State Farm nevertheless has the right to a jury trial with respect to whether, under its insurance contract, it was required to pay claims made by Brekke and Shaffer.

State Farm's role in the tort claim litigation is more problematic.

State Farm argues that its C.R.C.P. 38 request for a jury trial should have been granted with respect to the tort claims against Garcia and Rodriguez, relying on *Whaley* and the defendant's right in a civil action to demand a jury trial. State Farm implicitly assumes its role as a defendant in the contract claim litigation also extends to a role as a co-defendant in the tort claim litigation. State Farm's participation, however, is not so easily determined.

In Colorado, the role and extent of participation by the insurance provider in tort litigation between its insured and an uninsured motorist has not been directly addressed by any appellate court. The issue was raised but not directly resolved in both *Briggs v. American Family Mut. Ins. Co.,* 833 P.2d 859, 863 (Colo.App.1992) and *Peterman,* 961 P.2d at 490. In both cases, the insurance provider had not participated in the tort litigation and sought to escape the resulting judgment. *Briggs,* 833 P.2d at 863–64; *Peterman,* 961 P.2d at 490. Consequently, both the court of appeals and this court were able to resolve the cases by focusing on the failure to participate and did not need to consider the proper role of the insurance provider if it had participated. *Briggs,* 833 P.2d at 862–64; *Peterman,* 961 P.2d at 490–95. Brekke's and Shaffer's litigation, however, raises the question of the insurance provider's participation in tort litigation between its insured and an uninsured motorist.

When an insurance provider participates in litigation between its insured and an uninsured motorist, the participation creates a real and inherent conflict of interest between the two parties. First, section 10–4–609 and

the public policy impose a high standard of conduct on an insurance provider in its interaction with its insured. However, section 10–4–609's coverage applies only if the insured is "legally entitled" to damages. Consequently a finding of no liability or of limited damages on the part of the uninsured motorist will eliminate or limit a claim under the insurance provider's UM coverage. Thus, it is to the insurance provider's advantage to advocate the interests of the uninsured motorist in the tort litigation.[11] In *Peterman*, we recognized that "the insurer becomes almost adversary to its own insured in the context of uninsured motorist coverage." *Peterman*, 961 P.2d at 494. The insurance provider's conflicting duty to the insured and its interest in defending the uninsured motorist creates strong tension between its legal obligations and its business interests. This tension and the resulting conflict of interest are well recognized. *See* Francis M. Dougherty, Annotation, *Right of Insurer Issuing "Uninsured Motorist" Coverage To Intervene In Action By Insured Against Uninsured Motorist*, 35 A.L.R.4th 757, 1985 WL 287268 (1985).

The standard of conduct required of the insurance provider as a result of its conflict of interest, together with the insured's contractual duties of reporting and cooperation, distinguish the relationship between these parties from that found between other adverse parties.

▮ Insurance contracts are unlike ordinary bilateral contracts. *Goodson v. American Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo.2004); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003); *Huizar*, 952 P.2d at 344. The motivation for entering into an insurance contract is different than it is other contracts. *Goodson*, 89 P.3d at 414; *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984). Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage. *Goodson*, 89 P.3d at 414; *Cary*, 68 P.3d at 467; *Trimble*, 691 P.2d at 1141. Additionally, there is a disparity of bargaining power between the insurer and the insured; because the insured cannot obtain materially different coverage elsewhere, insurance policies are not generally the result of bargaining. *Goodson*, 89 P.3d at 414; *Huizar*, 952 P.2d at 344. Unlike the breach of the implied duty of good faith and fair dealing in an ordinary contract, breach in an insurance contract gives rise to a separate cause of action in tort. *Goodson*, 89 P.3d at 414; *Cary*, 68 P.3d at 466.

▮ Because of the special nature of uninsured motorists coverage, we have held the contract creates a relationship between the insurer and the insured that we have described as quasi-fiduciary.[12] *Peterman*,

---

11. "[T]he insurer has a distinct interest in the third party being found not liable to the insured, which is in direct conflict with the insured['s] interest in establishing that the third party is legally liable to them. As a result, there is considerable recognition that the UM insured and UM insurer have a primarily adversarial relationship under a UM contract." Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 124:1 (3d ed.2004).

12. While we recognized a quasi-fiduciary relationship in uninsured motorist insurance in *Peterman*, when deciding the appropriate standard of care in bad-faith litigation on liability insurance, we found no quasi-fiduciary duty in *Goodson*. *See Goodson*, 89 P.3d at 414. Without discussing *Peterman* and uninsured motorist coverage, we stated hat there is no quasi-fiduciary duty in the first-party context. *Id.* We recognize that *Peterman* and *Goodson* could be viewed as inconsistent, and raise questions concerning the standard of care in bad-faith litigation on unin-

sured motorist protection. We note that other jurisdictions have recognized an insurance provider's quasi-fiduciary duties in the uninsured/underinsured motorist context to decide the appropriate standard of care in bad-faith litigation. *See Danner v. Auto-Owners Ins.*, 629 N.W.2d 159, 169–70 (Wis.2001) (with respect to a bad-faith claim by insured against insurance provider for failure to pay underinsurance claim, court recognized the relationship between insurance provider and insured as a "fiduciary relationship" encompassing the duty of good faith and fair dealing); *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz.2000) (insurance provider has "some duties of a fiduciary nature" with respect to first-party underinsured motorist claim). However, we need not address these questions today. Regardless of the standard of care in uninsured motorist insurance, aspects of the relationship between the insurance provider and the insured are accurately described as quasi-fiduciary. Significant to us today are particular aspects of the relationship that

961 P.2d at 494. The aspect of this quasi-fiduciary relationship significant to us today in the uninsured motorist context is the insurance provider's duty to investigate and adjust a claim in good faith. *Lazar v. Riggs,* 79 P.3d 105, 107 (Colo.2003); *Trimble,* 691 P.2d at 1142. If an insurance provider does not investigate and process the insured's uninsured motorist claim in good faith, it has acted inconsistent with its relationship to the insured. *See Cary,* 68 P.3d at 466. Therefore, prior to litigation between an insurance provider's insured and an uninsured motorist, the insurance provider is under a duty to conduct a good-faith investigation of the accident that caused its insured's injury. In *Peterman* we also stated that nothing in UM litigation vitiated the underlying contractual and quasifiduciary duty that the insurer owes its insured. *Peterman,* 961 P.2d at 494.

In addition to the duty to investigate owed by the insurance company to the insured, the insured owes contractual duties of cooperation and reporting to the insurance provider. For example, their contracts required Brekke and Shaffer to cooperate with and assist State Farm when asked in the process of negotiating settlements, securing and giving evidence, attending hearings and trials, and assisting witnesses to attend hearings and trials. The contracts also impose an additional list of duties on Brekke and Shaffer designed to assure that State Farm had all the information about the nature of the UM claim before it paid the claim.[13] If these duties are fulfilled, the insured will provide extensive information to the insurance provider that it may use to determine what occurred in the accident underlying the UM claim.[14] These duties of reporting and cooperation required by the insurance provider from its insured create an exceptionally close relationship between the two parties.

Thus, in surveying the reciprocal duties of the two parties, the insurance provider's duty to its insured to investigate the accident is balanced by the insured's contractual duty to provide information and cooperation to the insurance provider about the accident. If both parties fulfill their reciprocal duties, virtually all relevant facts and issues likely to arise in the tort litigation will be known by both the insurance provider and its insured long before any suit is filed.[15]

*Huizar* and *Peterman* guide what litigation procedures comply with the public policy

---

we generally refer to as quasi-fiduciary without addressing the standard of care that is required for the purposes of bad-faith litigation.

**13.** Their contracts specifically provide that Brekke and Shaffer must:

(1) Give State Farm notice of the accident as soon as reasonably possible, and the notice must include the insured's name, the names and addresses of all persons involved, the hour, date, place and facts of the accident, and the names and addresses of witnesses;
(2) provide all records, receipts and invoices relating to the damages;
(3) answer questions about the damages to the vehicle under oath as often as State Farm reasonably asks;
(4) give State Farm "all the details" about any death, injury, treatment and anything else required to determine the amount payable;
(5) submit to examinations by physicians chosen and paid by State Farm as often as State Farm reasonably requires;
(6) answer questions about the personal injuries under oath as often as State Farm reasonably asks;
(7) report a "hit and run" accident to the police within 24 hours after the accident, and to State Farm within 30 days; and

(8) send State Farm copies of all suit papers when the party liable for the accident is sued for these damages.

**14.** For example, in these cases, State Farm's contracts with its insureds, among other rights, gave State Farm the right to compel its insureds to submit to physical examinations, to answer questions about the facts under oath, and to obtain all reports prepared in connection with the accidents. These represent rights that an ordinary party could obtain only by filing suit and invoking discovery procedures. *See* C.R.C.P. 26–37.

**15.** By contrast, the typical parties in an ordinary civil litigation are not under these reciprocal duties to disclose information and investigate the claims. Since one or more of the parties must institute the civil action with limited knowledge of what information is possessed by the opposing party, the typical civil litigant uses discovery through the trial process to eliminate surprises, discover relevant evidence, simplify the issues, and promote fair and just settlements of cases. *See Bond v. Dist. Court,* 682 P.2d 33, 36–37 (Colo.1984); *Hawkins v. Dist. Court,* 638 P.2d 1372, 1375–78 (Colo.1982); *Cameron v. Dist. Court,* 193 Colo. 286, 289, 565 P.2d 925, 928 (1977).

that protects the insured from being forced to traverse undue procedural hurdles and re-litigate matters prior to a recovery under a UM policy. *Huizar,* 952 P.2d at 348; *Peterman,* 961 P.2d at 493. If an insured must submit to all the procedures and expenses of discovery and trial when both parties have already fulfilled their reciprocal duties, the system has created redundant procedures much like the undue procedural hurdles disapproved by *Huizar* and *Peterman. See Huizar,* 952 P.2d at 348; *Peterman,* 961 P.2d at 494. Public policy does not allow such redundant procedures to dilute coverage in the UM context.

■ Therefore, because of the reciprocal duties we have outlined, and following *Huizar* and *Peterman,* we hold that the role of the insurance provider in its insured's litigation with an uninsured motorist is unique and is not that of a co-defendant [16] with the uninsured motorist who may invoke the full panoply of trial procedures, including the right to a jury trial. Although the insurance provider's unique role prevents it from participating as a co-defendant that can demand a jury trial, limited participation may be required to permit the insurance provider to present legitimate defenses that the uninsured motorist fails to raise. In such cases, the interest of the insurance provider in presenting these legitimate defenses may not be sufficiently protected without some participation by the insurance provider.

Several courts in other states have indicated that the insurance provider may be allowed to participate in the tort proceedings between the insured and the uninsured motorist. *See, e.g., Phoenix Ins. Co. v. Stuart,* 289 Ala. 657, 270 So.2d 792, 799 (1972); *Vernon Fire & Cas. Ins. Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60, 67 (1976). In several of the cases, as in *Peterman* and *Briggs,* courts held that the insurance provider could participate; however, the courts were not confronted with issues requiring them to determine the exact nature or parameters of the insurance provider's participation in the tort litigation. *See Terzian v. California Cas. Indem. Exch.,* 42 Cal.App.3d

942, 117 Cal.Rptr. 284, 286 (1974); *Heisner v. Jones,* 184 Neb. 602, 608, 169 N.W.2d 606, 610 (1969); *Dominici v. State Farm Mut. Auto. Ins. Co.,* 143 Mont. 406, 414, 390 P.2d 806, 810 (1964). As such, these cases provide little guidance on the extent of the insurance provider's participation in the litigation between its insured and an uninsured motorist.

Some courts have stringently limited the participation of the insurance provider in tort litigation. These courts, led by courts in Texas, resolved the issues by prohibiting or severely restricting intervention on the part of an insurance provider in a tort action against an uninsured motorist. *See Allstate Ins. Co. v. Hunt,* 450 S.W.2d 668, 671 (Tex. Civ.App.1970), *aff'd* 469 S.W.2d 151 (Tex. 1971); *Riley v. State Farm Mut. Auto. Ins. Co.,* 420 F.2d 1372, 1376–77 (6th Cir.1970); *MFA Mut. Ins. v. Bradshaw,* 245 Ark. 95, 431 S.W.2d 252, 255 (1968).

Other states have not taken the Texas courts' stringent and highly restrictive approach to intervention, but nonetheless provide a limited role for insurance providers in the tort litigation. For example, the Illinois Court of Appeals allowed an insurance provider to intervene in the litigation, but limited its intervention in the following ways: (a) the jury was informed that the uninsured motorist lacked insurance, (b) the insurance provider had to acknowledge to the jury that it would be bound by a judgment against the uninsured motorist, (c) the insurance provider had to accept the facts as already tried by the parties, unless it could make a specific showing to the trial court that it had proof the facts in reality differed or that another issue could be raised, and (d) the insurance provider had to submit to any other conditions the trial court might impose. *Wert v. Burke,* 47 Ill.App.2d 453, 197 N.E.2d 717, 720 (1964).

Kentucky's highest court observed, "[w]ith the advent of the uninsured-motorist concept numerous procedural and substantive problems have arisen, seemingly with no adequate answers in the common law or statutory law." *Barry v. Keith,* 474 S.W.2d 876, 877

---

16. "A co-defendant is a co-party to the uninsured motorist, meaning he or she has *like status* with another party." *See* Black's Law Dictionary (5th ed.1979) (emphasis added).

(Ky.1971). The court observed that no clear trend had emerged from the courts that addressed the problem. *Id.* In *Keith*, the Kentucky court imposed the same conditions as the Illinois court imposed in *Wert*, but added several more: (a) the respective parties and their attorneys' affiliations must be revealed to the jury, (b) the insurance provider had to disclose to its insured that its interests might be in conflict with the interests of the insured, (c) the insurance provider had to inform its insured that he or she was not required to cooperate with the insurance provider, and (d) any information gained by the intervenor insurance provider from the insured by reason of the insurer-insured relationship could not be used against the insured. *Id.* at 878.

The Supreme Court of Utah, while allowing the insurance provider to participate as a party, limited the adverse impact of its ruling on the insured by requiring the insurance provider to pay for independent legal counsel for the insured. *Chatterton v. Walker*, 938 P.2d 255, 262 (Utah 1997). After noting that "the conflict of interest generated by uninsured motorist protection is indeed problematic," the court analogized to cases where an insurance provider must defend two of its own insureds who are suing each other, where the insurance provider is required to provide independent counsel to both parties at trial. *Id.* at 261. Likewise, the Utah court held that if an insurance provider intervenes on the side of an uninsured motorist in a suit brought by its own insured, it must pay for independent counsel for its own insured to counter the temptation to prolong litigation in hopes of forcing a settlement. *Id.* at 261–62. At least two other courts have similarly required insurance providers to pay for independent counsel when they intervene on the side of the uninsured motorist in the tort litigation adversely to their own insured. *Fetch v. Quam*, 530 N.W.2d 337, 341 (N.D. 1995); *Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 436 A.2d 465, 476–77 (1981).

In each of these cases, the court allowed participation by the insurance provider in a manner that also balanced the duties of insurance provider and the insured's right to undiluted UM recovery against the interest of the insurance provider in a fair hearing on its legitimate defenses. *See Fetch*, 530 N.W.2d at 341; *Webb*, 436 A.2d at 476–77; *Walker*, 938 P.2d at 255; *Keith*, 474 S.W.2d at 878; *Wert*, 197 N.E.2d at 720. With no consensus among the states as to the proper role of an insurance provider in the tort litigation,[17] we seek a solution that balances the duties of the insurance provider and the insured's right to an undiluted UM recovery against the interest of the insurance provider in receiving a fair hearing on its legitimate defenses.

In shaping this solution, we are unwilling to restrict the rights of the insurance provider as strictly as have those courts led by Texas, because no other forum exists to hear the insurance provider's legitimate defenses. Excessively stringent limitations on participation provide insufficient protection for the insurance provider.

Instead, the insurance provider's participation in tort litigation between its insured and an uninsured motorist[18] must be structured to protect the insurance provider's interests in receiving a fair hearing such that it may raise legitimate defenses.[19] Ordi-

---

17. At least one commentator has observed that the inherent conflict of interest in UM coverage litigation creates a "24K mess of garbage." 8C John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 5089.55 (1981).

18. Indiana courts have labeled the relationship as one of "party defendants" rather than co-defendants. *Allstate Indemn. Co. v. Brown*, 696 N.E.2d 92, 95 (Ind.App.1998); *Ind. Ins. Co. v. Noble*, 148 Ind.App. 297, 265 N.E.2d 419, 432 (1970).

19. The prior Colorado cases of *Briggs* and *Peterman*, as with much of the jurisprudence we ex-

amine in this opinion, discussed the participation of the insurance provider in terms of Colorado's liberal joinder rule. *See* C.R.C.P. 18; *Peterman*, 961 P.2d at 494 n. 5; *Briggs*, 833 P.2d at 863. In the cases at bar, State Farm was named as a defendant by Brekke and Shaffer, as was required by their contract. We see, however, no meaningful distinction in this difference. For the reasons we have just examined, the essential dynamics of the tort litigation against an uninsured motorist remain virtually identical whether the insurance provider intervenes in the litigation or is named as a defendant, and therefore, we draw no distinction between an insurance

narily, the insurance provider would not be allowed a jury trial and in many cases its participation would be limited to the damages hearing of the default judgment, however, the nature and extent of the insurance provider's participation in the tort litigation should be handled on a case-by-case basis. In determining on a case-by-case basis how the role of the insurance provider should be structured, we look first to principles from *Clementi, Huizar,* and *Peterman.*

In *Clementi,* the insured did not inform his insurance company of an accident involving an uninsured motorist within the time limits specified by his policy. *Id.* at 224–25. The district court found that the insured's delay was unreasonable but did not find that the insurance provider must show that it was prejudiced by the delay in order to deny the insured's claim. *Id.* at 225. When we examined the case, we held that the strong public policy underlying UM coverage in Colorado required that the insurance provider show prejudice, even if it were untimely notified of the accident. *Id.* at 230.

▬▬▬▬ Thus in *Clementi,* we recognized that the strong public policy of UM coverage did not allow an insurance provider to assert breach of contract as a mechanism to deny coverage without also showing that it had been prejudiced by the breach. *See id.* at 223–24, 226–27. Similarly, in the uninsured motorist tort litigation presented here, the strong public policy underlying UM coverage does not allow the insurance provider to assert all the procedural rights of a defendant unless it will be denied a fair hearing on specific legitimate claims regarding the UM coverage. The insurance provider in this context must be allowed to protect its interest in a fair hearing on its legitimate defenses without interfering with the insured's right to avoid unnecessary dilution of its UM coverage by excessive procedural hurdles. *Huizar,* 952 P.2d at 349; *Peterman,* 961 P.2d at 494–95. As such, the insurance provider may participate in the tort litigation against the uninsured motorist only to the extent necessary to protect its interest in a fair hearing on its legitimate defenses.

▬▬▬▬ Further, in *Clementi,* we reasoned that the insurance provider was in a position to more easily show prejudice than for an insured to show no prejudice and, therefore, held that the public policy also required that the insurance provider bear the burden of proof in showing that it had been prejudiced by the late notification. *Id.* at 232–33. Similarly, in the case of participation in the tort claim litigation, the insurance provider can more easily show how its interest in a fair hearing on its legitimate defenses would be deprived without participation; conversely, it is more difficult for the insured to show that his or her rights to an undiluted UM recovery would not be adversely affected by greater participation by the insurance provider. Therefore, as in *Clementi,* the burden falls on the insurance provider to show that its interest in a fair hearing on its legitimate defenses will be unprotected without greater participation in the proceedings. To permit the court to determine the extent of the insurance provider's participation, the insurance provider must specifically set forth the legitimate defenses [20] it intends to raise. Regardless of whether the insurance provider is named in the original complaint, or is making a motion to intervene, these particular allegations must be made in the tort litigation as soon as practicable.

▬▬▬▬ Once the insurance provider has pled these specific and particular allegations, the trial court may consider whether good-faith grounds exist to believe that the interests of the insurance provider in presenting legitimate defenses require limited participation of the insurance provider in the tort litigation. The trial court may hold a hearing to determine if the insurance provider has grounds sufficient to entitle it to participation in the tort litigation. It should consider in each case the duties of the insurance

provider's role as an intervenor or a named party in the tort litigation.

**20.** We find our holdings on pleading special matters involving fraud or mistake applicable in determining that the insurance provider must plead its legitimate defenses with particularity. *See* C.R.C.P. 9; *Henderson v. Gunther,* 931 P.2d 1150, 1168 (Colo.1997).

provider, the insured's right to an undiluted UM recovery, and the interest of the insurance provider in receiving a fair hearing on its legitimate defenses. The court should structure the role of the insurance provider in the tort litigation narrowly to reflect these considerations and protect the legitimate interests of all parties.[21]

■■■ We recognize the insurance provider will usually be allowed to fully participate in the damages phase of a default judgment hearing, but its participation in any liability determination will be more limited. In either case, however, in the absence of an appearance by the uninsured motorist, the procedural setting remains that of a default judgment, where liability is ordinarily established by default but damages are resolved in a hearing. C.R.C.P. 55; *cf. Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 679 (Colo.1987). Because a damages hearing will be held regardless of the participation of the insurance provider, its participation in the damages hearing has a lesser impact on the dilution of UM coverage under section 10–4–609. By contrast, permitting the insurance provider to contest issues of liability or causation would require a separate hearing in circumstances where such a hearing is not otherwise required. Because holding an additional hearing to a greater extent impacts the dilution of UM coverage, such a hearing on liability or causation will be granted only when it clearly appears that the legitimate defenses of the insurance provider will not be presented to the court without such an additional hearing.

■■■ When making these determinations, the district courts have the ability to structure the role of the insurance provider appropriately based on the courts' broad power to consolidate claims, determine joinder, and determine misjoinder. *See* C.R.C.P. 18, 19, 20, and 21. As in similar questions on the permissive joinder of parties and court determinations as to joint or separate trials, the decision on the proper role for the insurance

provider in the litigation falls within the sound discretion of the district court. *See Sutterfield v. District Court,* 165 Colo. 225, 231, 438 P.2d 236, 240 (1968); *Moseley v. Lamirato,* 149 Colo. 440, 447–48, 370 P.2d 450, 455 (1962); *Willy v. Atchison, T. & S.F. Ry. Co.,* 115 Colo. 306, 321, 172 P.2d 958, 965 (1946). As we noted in *Sutterfield,* an abuse of discretion here occurs where the court's failure to properly order the proceedings virtually assures prejudice to a party. 165 Colo. at 231, 438 P.2d at 240.

### C. Application

■■■ We now examine the actions of the district courts in these two cases to determine whether they abused their discretion when they denied State Farm's requests for jury trials and only allowed State Farm to participate in the damages hearings. With respect to the negligence claims, although the district courts in these cases did not have the benefit of our opinion, both courts treated the issues substantially as we direct in this opinion. With respect to the uninsured motorist contract claims, the court in Shaffer's case properly treated the claim separately and permitted State Farm a jury trial. In Brekke's case, however, the court abused its discretion when it entered judgment against State Farm and denied State Farm the opportunity for a jury trial on the uninsured motorists contract claim.

Brekke filed suit in September of 1998, about three years after the accident that injured her. State Farm did not allege that Brekke failed to fulfill her contractual obligations to cooperate or assist in the claim process. More importantly, State Farm conceded that it was not challenging the liability of the uninsured motorist. State Farm had ample opportunity to raise legitimate defenses to Garcia's liability, but asked to contest only the amount of Brekke's damages.

---

21. The interests of the parties will differ depending on the facts of each case. If the events causing the accident are clear and liability is easily established, then the interests of the insured will weigh more heavily and the participation of the insurance provider will be limited. If, on the other hand, there is evidence that the insured is colluding with the uninsured motorist or had failed to cooperate with its insurance provider, then the interests in allowing participation by the insurance provider will weigh more heavily.

■ At the damages hearing, the court allowed State Farm to challenge Brekke's evidence, cross-examine Brekke's witnesses, and offer its own evidence. As such, the district court properly allowed State Farm the opportunity to contest damages and appropriately denied State Farm a jury trial on the negligence claim against Garcia.

In short, the district court in Brekke's case provided precisely the protection of State Farm's interests in the tort claims against the uninsured motorist that we anticipate district courts will provide for the rights of an insurance provider based on the principles explained in this opinion. Specifically, the court allowed State Farm to participate only in the damages portion of the default judgment against Garcia because State Farm only challenged the amount of damages.

■ However, the district court failed to make a distinction between the contract claim against State Farm and the negligence claim against Garcia when it entered judgment against both defendants during the default proceedings. Although little was left to decide in the contract claim against State Farm once Garcia's tort liability had been established in the default proceeding, State Farm was still entitled to the opportunity for a jury trial on the remaining elements of the contract claim against them. Because State Farm has a right to a jury trial on the uninsured motorists contract claim, the district court abused its discretion when it denied State Farm that right.

Accordingly, we reverse the judgment against State Farm and affirm the judgment against Garcia. The case is remanded and, consistent with this opinion, State Farm is entitled to a jury trial on the uninsured motorists contract claim against it, but State Farm has no further right to contest Garcia's liability or damages entered against him.

In Shaffer's case, the court bifurcated consideration of the contract claims against State farm from the negligence claims against Rodriguez. It reserved State Farm's contract claim for later trial. Unlike Brekke's case, here State Farm did not formally waive its right to contest Rodriguez's liability.

When Shaffer moved for a default judgment against Rodriguez on the tort claims, State Farm's motion in opposition alleged that State Farm had a "potential" interest in the liability issues that would be determined by a default judgment against Rodriguez. The court ruled that State Farm's "potential" interest in liability issues was not sufficient to grant participation other than in the damages hearing. When the trial court held that the "potential" interest in liability was not sufficient to allow greater participation by State Farm in the liability determination against Rodriguez, State Farm responded with further arguments, but did not make any specific allegations identifying legitimate defenses.

At the damages hearing State Farm participated as a party. The issue of liability was mentioned only once when State Farm in its opening noted that the accident occurred because Rodriguez had "apparently ran the red light." The evidence and testimony at the hearing subsequently focused exclusively on the nature and extent of Shaffer's injury. Once judgment had been entered, State Farm sought relief from judgment in which it made a passing reference to liability but argued with great detail and specificity that a new jury trial was required to determine the damages caused by Rodriguez.

While we realize that it is common practice for defendants to file general answers, the district court's holding should have put State Farm on notice that it was required to more specifically indicate whether it had legitimate defenses to Rodriguez's liability. Under these circumstances, it would serve little purpose to remand Shaffer's case to consider whether State Farm had legitimate defenses to Rodriguez's liability. We consequently hold that the district court in Shaffer's case did not abuse its discretion by allowing State Farm to participate only in the damages hearing of the default judgment proceeding against Rodriguez.

### III. Conclusion

We reach the same conclusions in both cases with respect to the negligence claims against both uninsured motorists. First, the "actual trial" clauses in Brekke's and Shaf-

fer's policies are unenforceable because the clauses dilute UM coverage. Second, the district courts properly weighed the competing interests and correctly allowed State Farm's participation in the damages hearing without a jury.

With respect to the uninsured motorist contract claims against State Farm, in Shaffer's case the court correctly bifurcated its treatment of the tort and contract claims thereby recognizing State Farm's right to a jury trial on the contract claims. In Brekke's case, however, the district court abused its discretion when it entered judgment gains State farm without first permitting State Farm the opportunity for a jury trial on the uninsured motorist contract claim asserted by Brekke.

We therefore affirm the judgments of the court of appeals in *Shaffer*. In *Brekke*, we affirm in part, reverse in part, and remand with directions to conduct further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

Justice KOURLIS dissenting.

## I. Introduction

In these cases, both the terms of the insurance contract at issue and the applicable court rules would have allowed State Farm Mutual Automobile Insurance Company ("State Farm") to demand and receive a jury trial on the issue of damages. The majority overturns both the contracts and the rules on the grounds that a term within the insurance contract that limits uninsured motorist coverage to judgments resulting from "actual trials" is repugnant to public policy. In reaching that conclusion, the majority rejects the notion that an insurer, sued simultaneously with an uninsured motorist by its insured, is not a co-defendant in the traditional sense—in which case the insurer would be entitled to invoke its right to a jury trial. Rather, the court creates a special rule for this circumstance, pursuant to which the insurer must bear the added burden of demonstrating why

it would be prejudiced by a trial to the court on the issue of damages rather than a trial to a jury.[1]

The majority finds support for this conclusion in the legislative intent underlying the uninsured motorist statute and in our decisions in *Huizar v. Allstate Ins. Co.*, 952 P.2d 342 (Colo.1998), *Peterman v. State Farm Mut. Ins.*, 961 P.2d 487 (Colo.1998), and *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223 (Colo.2001). In my view, neither the statute nor the cases suggest that the "actual trial" portion of the policy language is in contravention of public policy. Hence, I respectfully dissent.

## II. Facts

In this consolidated appeal, State Farm challenges two decisions of the court of appeals concerning its liability for damages entered on default judgment against two uninsured motorists. The two plaintiffs in the underlying cases, Gloria J. Brekke and Clinton Shaffer, had auto insurance policies with State Farm, which policies included uninsured motorist ("UM") coverage. Both Brekke and Shaffer were hit by uninsured motorists and later sought coverage.

In September 1995, Brekke was involved in a hit-and-run accident with a vehicle registered in the name of Garfield Gus Garcia. Shaffer's accident occurred in August 1996 when he was hit by a car driven by Jordan Rodriguez.

Three years after Brekke's accident, she filed a personal injury action naming Garcia and State Farm as defendants. She asserted a contract claim against State Farm under her UM coverage and sued Garcia for negligence. Shaffer sued more then four years after his accident, asserting negligence and loss of consortium against Rodriguez and breach of contract against State Farm. State Farm promptly filed an answer and demanded jury trials in both Brekke's and Shaffer's cases and cross-claimed Rodriguez in Shaffer's suit. Neither Garcia nor Rodriguez appeared to defend the claims against them. As a consequence, default entered against

---

1. Potentially, this burden will be very difficult to satisfy since it involves convincing the judge as fact-finder that a group of fact-finders would be hypothetically preferable.

both individuals. In both cases, State Farm filed motions asking the trial court to delay entry of the default judgment until after trial on the damages issues, or alternatively, asking that any default judgment entered against Garcia and Rodriguez not be binding on State Farm.

In *Brekke*, the trial court ruled only that the entry of default judgment against Garcia did not bar the insurer from challenging damages. The court later denied State Farm's motion to reconsider the default judgment issue and its request for jury trial, concluding that the policy did not encompass the right to trial by jury and that State Farm's right would be adequately protected in the damages hearing. Following the subsequent hearing, the trial entered a damages judgment in Brekke's favor.

The court of appeals affirmed the trial court's decision, concluding that State Farm had implicitly waived its right to a jury trial because the policy requires only an "actual trial." In addition, the court held that if the policy had not effectuated a waiver, the "actual trial" clause would be void as against public policy.

In *Shaffer*, the trial court found the default judgment against Rodriguez binding on State Farm, reasoning that, "State Farm has a reasonable opportunity to protect its interest in the suit by participation in the evidentiary hearing on damages." The court entered an award of damages following a hearing, and State Farm appealed. As in *Brekke*, the court of appeals affirmed, concluding that because State Farm's language only spoke of "actual trial," the company had waived its right to jury trial. Moreover, the court concluded that Rodriguez's default automatically divested State Farm of its right to a jury trial.

### III. Discussion

Using the declaration of purpose underlying section 10–4–609, C.R.S. (2004) as a backdrop, the majority decides that State Farm's "actual trial" clause contravenes public policy. As the majority explains it, our longstanding recognition of the role of UM coverage in protecting against loss caused by financially irresponsible motorists has informed this court's decisions, which broadly interpret the statute's underlying intent in preventing the dilution of UM benefits. To support that proposition, the majority points to the statute's direction that individuals "legally entitled to recover damages" from owners or operators of uninsured vehicles may recover under the policy.

I do not view the purpose or direction of the statute as having such broad implications. Although the statute certainly intends to protect motorists who suffer injuries as a result of accidents with non-insured drivers, nowhere does the statute provide that the insurance companies lose the right to litigate fully the amount of those damages.

The majority also relies heavily on our statements in three cases: *Huizar v. Allstate Ins.*, 952 P.2d 342 (Colo.1998), *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487 (Colo.1998), and *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223 (Colo.2001), as supporting the proposition that State Farm's "actual trial" clause violates public policy.

*Huizar* had at its foundation our longstanding recognition of the policy favoring settlements of disputes by arbitration. We were concerned that an insurance policy's de novo trial clause permitting the insurer to avoid final judgment entered following a complete arbitration proceeding would render the arbitration proceeding meaningless. *Huizar*, 952 P.2d at 347. We emphasized that a de novo trial would require the retrial of matters that had already been determined by the arbiter. *Id.* Most importantly, we noted that in the arbitration proceeding, the arbiter had determined both the issues of liability and damages and had awarded costs. *Id.* We pointed to the established public policy favoring arbitration as an economic and efficient means of reducing costs and resolving disputes out of court. *Id.* at 346. A trial de novo would have constituted a new proceeding (since nothing would survive arbitration) in a separate forum, thereby rendering that preceding "a nonbinding guide to evaluating the claim for settlement purposes." *Id.* at 348.

In *Peterman*, 961 P.2d at 491–93, we invalidated an insurer's "consent to sue" clause in a context in which the insurer knew of a pending lawsuit by the insured against uninsured motorists, but had refused to intervene. Later, the insurer sought to challenge the default judgment obtained by the insured after the uninsured motorist failed to appear. *Id.* at 490. The contractual consent to sue clause made "any judgment against any person or organization" nonbinding against the insurer without its consent. *Id.* at 489. Therefore, the insurer could force the insured to re-litigate liability completely. In addition, the insurer sought to enforce its arbitration clause after the insured had already obtained a judgment against the uninsured motorist. *Id.* at 490. The thrust of the *Peterman* case was that an insurer cannot sit on its rights and force the insured to litigate and re-litigate its claims. It was presumably because of the *Peterman* case that litigation such as the cases before the court today now includes the insurer as a party,[2] instead of a procedure by which the insured would sue State Farm separately after conclusion of the tortfeasor litigation.

In *Clementi*, this court adopted the notice-prejudice rule in an uninsured motorist case in which the insured did not notify the insurance company of the UM claim until seventeen months after the accident. The contract required notice "as soon as practicable" and the insurer sought to avoid liability on the grounds that the contract clause had been violated. *Clementi*, 16 P.3d at 224. This court concluded that the insurer may not escape liability on the basis of a "technicality," but would rather be required to demonstrate that the late notice had caused prejudice in its ability to investigate or defend the claim. *Id.* at 232. The majority applies *Clementi* to the cases before us today and concludes that the insurance provider may not assert all the procedural rights of a defendant unless it can demonstrate that it will be prejudiced if not permitted to do so.

I do not agree that *Huizar*, *Peterman* and *Clementi* lead us to the conclusion that State

Farm's "actual trial" clause violates public policy. Unlike the de novo clause in *Huizar*, State Farm's "actual trial" clause by comparison, does not offer an avenue for circumventing a judgment entered on a complete proceeding in which the parties have had the opportunity to litigate issues relating to both damages and liability. Instead, the clause counterbalances possible issues of fraud, illegality and misrepresentations about damages. *See Nat'l Union Fire Ins. Co. v. Lynette C.*, 27 Cal.App.4th 1434, 33 Cal.Rptr.2d 496, 497 (1994) (holding that "actual trial" against insured, requires independent adjudication of facts based on evidentiary showing and process that does not create potential for abuse, fraud, or collusion). As the majority acknowledges, such issues are not an anomaly in these cases. Similarly, the consent to sue clause in *Peterman* broadly authorized the insurer to refuse to honor a claim arising from "any judicial proceeding," even under circumstances in which the insurer had notice and refused to intervene. In both cases, the insurers' contractual terms compelled the insured to suffer unnecessary costs and duplicative proceedings. So, too, in *Clementi*: we viewed the notice provision as one that could deprive the insured of coverage on the basis of a technicality. Here, we are not dealing with duplicative proceedings or technicalities. We are dealing with the right of a party to a lawsuit to demand and receive one jury trial, rather than a trial to the court.

We have acknowledged that UM coverage cannot completely replicate the coverage that would be available to an injured party by an insured tortfeasor, and that "not every deviation in uninsured motorist coverage ... constitutes an impermissible attempt to dilute [such coverage] in violation of public policy." *See Huizar*, 952 P.2d at 348. The "actual trial" clause, in my view, is not an impermissible impediment to coverage. State Farm was required to participate in both lawsuits here, but was not offered the opportunity to litigate the issues in the same manner as the plaintiffs. By its restriction of coverage to persons "legally entitled to recover," the statute was never intended to create such a

---

2. This can occur either by virtue of a clause demanding that the insured sue the company

with the tortfeasor, or by virtue of intervention.

sweeping bar. Accordingly, I disagree with the majority's conclusion that State Farm's "actual trial" clause violates public policy.

The majority also creates a distinction between the insurer's rights in the contract portion of the action, and in the tort portion of the action. I do not agree that such a distinction is necessary. Certainly, the relationship between the insured and the insurer is fraught with uncomfortable tension when the insured is injured by an uninsured tortfeasor because the insurance company has an economic interest in attempting to minimize the liability of that tortfeasor. That interest is not, however, in my view sufficiently different from the insurer's adversary position with respect to any breach of contract claims to justify wholly different procedures.

Courts have struggled with the appropriate procedures for uninsured motorist litigation. As an example, while the insured is required to cooperate in the third-party insurance litigation context, it has been held that in the UM litigation context, the insured need not cooperate with the insurer. *See Wheeler v. Creekmore,* 469 S.W.2d 559, 563 (Ky.1971); *see also Guthrie v. State Farm Mut. Auto. Ins. Co.,* 279 F.Supp. 837, 843 (D.S.C.1968) (holding that "there is no need for cooperation between the insurer and the insured in connection with an uninsured motorist because they are, in effect and practically speaking, adversaries"). One court in particular, has observed that except for establishing liability, "the only prerequisite which has survived judicial interpretation is that service of process be served on the insurer when suit is initiated against an uninsured." *Id.* The service of process offers the insurer the right to file pleadings and defend the uninsured motorist. *Id.* In fact, unlike Texas, most states have determined that the insurer has a right to intervene as a matter of law to defend the uninsured motorist, should the insured fail to join the insurer. *See Milton v. Preferred Risk Ins.,* 511 S.W.2d 83, 86 (Tex.App.1974).

The majority's assertion to the contrary, it is not the insurer's "unique" role in tort litigation generally that determines its right to jury trial. If anything, the insurer has a "unique" role in the UM context that warrants that the insured participate in UM litigation.

Because of the adversarial relationship between the insured and the insurer in the UM context, the insurer serves in the capacity of a co-defendant when joined in the tort litigation against the uninsured. The insurer bears potential responsibility for any judgment entered in that litigation. I do not agree that the unique nature of UM litigation deprives the insurance company, as a matter of public policy, of the right to a full jury trial on the issue of damages any more than it would deprive it of such a right, as a matter of public policy, in bad faith or contract litigation.

## IV. Conclusion

Neither the UM statute nor this court's precedent compel us to conclude that an insurer's "actual trial" clause contravenes public policy. Although an insured is entitled to the benefit of uninsured coverage when necessary, such coverage is not inappropriately diluted if it includes a demand that the matter be fully litigated if necessary. Accordingly, I respectfully dissent and would reverse the court of appeals' decisions in these cases.

I am authorized to state that Justice COATS joins in this dissent.