2013 CO 17

**Steven PHAM, as personal representative of the estate of Louis Diep Pham, deceased; Kinh B. Pham, natural parent of Louis Diep Pham, deceased; La T. Bui, natural parent of Louis Diep Pham, deceased; Vu Duy Nguyen; Kieu Trang Thi–Do; Khanh Ba Pham; Bang Le; and Minh Ngoc Ha, Petitioners,**

v.

**STATE FARM AUTOMOBILE INSURANCE COMPANY, Respondent.**

**Supreme Court Case No. 10SC504**

Supreme Court of Colorado.

March 4, 2013

---

Attorneys for Petitioners: William Muhr, LLP, William Muhr, Colorado Springs, CO.

Attorneys for Respondent: Seaman & Chambers, P.C., Thomas J. Seaman, Karl A. Chambers, Greenwood Village, CO.

JUSTICE COATS delivered the Opinion of the Court.

¶1 Steven Pham, representing the estate of the driver of a car involved in a traffic accident, along with the deceased driver's parents and the five passengers in his car at the time, sought review of the court of appeals' judgment in *Pham v. State Farm Auto. Ins. Co.*, No. 09CA0768, 2010 WL 2125361 (Colo.App. May 27, 2010) (not published pursuant to C.A.R. 35(f)). The court of appeals affirmed a summary judgment in favor of State Farm on grounds that the plaintiff-petitioners' claims were barred by

the statute of limitations governing underinsured motorist claims, found at section 13–80–107.5(1)(b), C.R.S. (2012).

¶ 2 Because the plaintiffs failed to file this action or demand arbitration of their underinsured motorist claims within either three years of the accrual of their cause of action or within two years after receiving payment of a settlement or judgment on an underlying bodily injury liability claim that had been preserved as prescribed by the statute, the judgment of the court of appeals is affirmed.

### I.

¶ 3 Along with a number of other lawsuits, this action for underinsured motorist coverage arose from an automobile accident that occurred in December 1995. A vehicle driven by Louis Diep Pham was struck by a vehicle driven by Erwin Guerra, who later admitted fault. Mr. Pham and all five of his passengers were injured in the accident, and Mr. Pham subsequently died from his injuries.

¶ 4 At the time of the accident, Mr. Guerra, the at-fault driver, was covered for bodily injury by his own automobile liability insurance policy, issued by Allstate Insurance Company, with policy limits of $25,000 per person and $50,000 per accident. Louis Diep Pham was driving a vehicle owned by Pham Enterprises and insured by State Farm Automobile Insurance Company, with a policy that provided uninsured/underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence. Several of the other passengers had separate policies with State Farm on their own vehicles, which also included underinsured motorist coverage, and two of the passengers had excess underinsured motorist coverage with Liberty Mutual Insurance Company. Finally, Mr. Guerra's employer, the owner of the vehicle he was driving, had a Business Auto policy issued by Hartford Fire Insurance Company, with $1 million in liability coverage.

¶ 5 In February 1996, Stephen Pham, the personal representative for the estate, and the five surviving passengers filed six separate lawsuits against various parties, including State Farm, Liberty Mutual, Guerra, Guerra's employer, and the bar that served Guerra before the accident. A month later, State Farm paid $75,000 in underinsured motorist benefits to the estate,[1] and still later that year, all six separate lawsuits were consolidated as case no. 96CV765 in the Denver District Court. In May, Guerra and the plaintiffs entered into a Stipulated Confessed Judgment for $1,558,707.78. The plaintiffs accepted $50,000 in liability coverage from Allstate and agreed not to enforce the judgment against Guerra in exchange for Guerra's assignment to them of any claims he might have against Hartford.

¶ 6 In August 1998, after Hartford declined to extend coverage to Guerra under the terms of the Business Auto policy, the plaintiffs in the consolidated action filed a lawsuit against Hartford in federal district courts in both Colorado and Virginia, asserting claims for breach of contract, bad faith breach of contract, and willful and wanton breach of contract. Also in 1998, while both the consolidated action and the federal litigation against Hartford were pending, these same plaintiffs, along with the parents of the deceased driver, filed another lawsuit in this jurisdiction against State Farm, seeking underinsured motorist coverage. After various motions to dismiss were granted and State Farm's motion for partial summary judgment was both granted and upheld on appeal, the only claim remaining in the 1998 state action was a claim by the estate and parents of the driver against State Farm for underinsured motorist coverage, which was stayed by stipulation of the parties pending disposition of the federal lawsuit against Hartford. In April 2006, following summary judgment in Hartford's favor, the federal lawsuit became final, and the stay of the 1998 state claim for underinsured motorist coverage against State Farm expired by its own terms. Following the failure of the plaintiffs to respond to inquiries or take further action in either case, the 1998 state action against State Farm was dismissed in February 2007 for

---

1. This figure represents State Farm's own $100,000 underinsured motorist limit, offset by Luis Diep Pham's $25,000 liability insurance coverage by Allstate. *See* § 10–4–609(5)(a), C.R.S. (2007).

failure to prosecute, and the consolidated action in 96CV765 was similarly dismissed in April of the same year.

¶ 7 The plaintiff-petitioners filed the instant lawsuit in March 2008, more than a dozen years after the initial accident and almost two years after their action against Hartford became final, alleging the same claims for relief against State Farm they had advanced in the 1996 and 1998 state actions. Once again the plaintiffs asserted claims of negligence and loss of consortium against Guerra and claims of breach of contract and bad faith breach of contract for State Farm's failure to pay underinsured motorist benefits. The district court granted State Farm's motion to dismiss the claims against it, concluding that they were barred both by the applicable statute of limitations and by the doctrine of claim preclusion. On direct appeal, the court of appeals affirmed the district court's summary judgment, interpreting the two-year limitations provision of section 13–80–107.5(1)(b) as running from May 1998, the point at which the plaintiffs received payment from Allstate of the settlement of their underlying bodily injury liability claim against Guerra, notwithstanding their pending action to recover additional liability insurance coverage by Hartford. The court of appeals did not address the claim preclusion issue.

¶ 8 We granted the plaintiffs' petition for a writ of certiorari on the question whether the court of appeals erred in its application of the statute of limitations in section 13–80–107.5(1)(b).

## II.

¶ 9 An obligation to offer insurance protection against uninsured and underinsured motorists has long been imposed by statute in this jurisdiction. *See* §§ 10–4–609 and 610, C.R.S. (2012). For almost two decades the legislature has devoted a specific provision in title 13, article 80 of the revised statutes, governing limitations of personal actions, exclusively to actions pertaining to insurance protection against uninsured and underinsured motorists. *See* § 13–80–107.5(1), C.R.S. (2012).[2] This statutory limitations

2. **§ 13–80–107.5. Limitation of actions for uninsured or underinsured motorist insurance.**

(1) Notwithstanding any statutory provision to the contrary, all actions or arbitrations under sections 10–4–609 and 10–4–610, C.R.S., pertaining to insurance protection against uninsured or underinsured motorists shall be commenced within the following time limitations and not thereafter:

(a) An action or arbitration of an "uninsured motorist" insurance claim, as defined in sections 10–4–609 and 10–4–610, C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the uninsured motorist is preserved by commencing an action against the uninsured motorist within the time limit specified in sections 13–80–101(1)(n) and 13–80–102(1)(d), then an action or arbitration of an uninsured motorist claim shall be timely if such action is commenced or such arbitration is demanded within two years after the insured knows that the particular tortfeasor is not covered by any applicable insurance. In no event shall the insured have less than three years after the cause of action accrues within which to commence such action or demand arbitration.

(b) An action or arbitration of an "underinsured motorist" insurance claim, as defined in section 10–4–609(4), C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the underinsured motorist is preserved by commencing an action against the underinsured motorist or by payment of either the liability claim settlement or judgment within the time limit specified in sections 13–80–101(1)(n) and 13–80–102(1)(d), then an action or arbitration of an underinsured motorist claim shall be timely if such action is commenced or such arbitration is demanded within two years after the insured received payment of the settlement or judgment on the underlying bodily injury liability claim. In no event shall the insured have less than three years after the cause of action accrues within which to commence such action or demand arbitration.

(2) As used in this section, unless the context otherwise requires:

(a) "Action" means a lawsuit commenced in a court of competent jurisdiction; and

(b) "Arbitration demand" means a written demand for arbitration delivered to the insurer that reasonably identifies the person making the claim, the identity of the uninsured or underinsured motorist, if known, and the fact that an uninsured or underinsured motorist insurance arbitration is being demanded.

(3) An uninsured or underinsured motorist cause of action accrues after both the existence of the death, injury, or damage giving rise to the claim and the cause of the death, injury, or

provision is carefully structured as two subsections: one applying specifically to "[a]n action or arbitration of an 'uninsured motorist' insurance claim, as defined in sections 10–4–609 and 610, C.R.S.," *see* subsection 107.5(1)(a), and the other applying specifically to "[a]n action or arbitration of an 'underinsured motorist' insurance claim, as defined in section 10–4–609(4), C.R.S.," *see* subsection 107.5(1)(b).

¶ 10 At all times pertinent to this case, the term "underinsured motor vehicle" was limited to those vehicles actually insured for bodily injury or death but with limits of liability that were either less than the limits of the insured's uninsured motorist coverage under his own policy or were reduced by payments to persons other than an insured in the accident to less than the limits of his uninsured motorist coverage. *See* § 10–4–609(4), C.R.S. (2007).[3] In addition, at all times pertinent to this case, the maximum liability of the insurer under required uninsured/underinsured motorist coverage was defined in terms of the relationship between the limits of its uninsured/underinsured motorist coverage and the amount recovered by its insured from or on behalf of the liable person, as well as the damages actually sustained by its insured but not otherwise recovered. *See* § 10–4–609(5), C.R.S. (2007).[4]

¶ 11 The limitations provisions of 13–80–107.5(1)(a) and (1)(b) each allow for two separate measures of the limitations period. An action for recovery on either an uninsured or underinsured insurance claim may always be brought within three years of the time both the existence and cause of the death, injury, or damage giving rise to the claim are known or should have been known. § 13–80–107.5(1) and (3). In addition, however, if a timely action is commenced against the uninsured or underinsured motorist on the underlying bodily injury liability claim, an action on an *uninsured* motorist claim may be brought within two years after the insured knows that the particular tortfeasor is not covered by any applicable insurance, § 13–80–107.5(1)(a), and an action on an *underinsured* motorist claim may be brought within two years after the insured victim receives payment of the settlement or judgment on the underlying bodily injury liability claim, § 13–80–107.5(1)(b). Further, if the insured victim actually receives payment of a settlement or judgment on his bodily injury liability claim within the time allowed for filing an action against the underinsured motorist on that claim, an action on an *underinsured* motorist claim may also be brought within two years of that payment, even though an action on the claim was never actually filed. *Id.*

¶ 12 The primary argument of the plaintiff-petitioners is that the provision of subsection (1)(a) permitting the commence-

---

damage are known or should have been known by the exercise of reasonable diligence.

3. Prior to 2008, section 10–4–609(4) read:

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:
(a) Less than the limits for uninsured motorist coverage under the insured's policy; or
(b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.
Effective January 1, 2008, subsection (4) was amended to end after the word "accident," deleting all references to limits of liability. Since

2008, an "underinsured motor vehicle" has therefore been defined merely as any "land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident." L. 2007, p. 1921 § 2, effective January 1, 2008.

4. Prior to 2008, section 10–4–609(5) read:

(5) The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:
(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or
(b) The amount of damages sustained, but not recovered.
Effective January 1, 2008, subsection (5) was deleted, and a new subsection (1)(c) was added, specifying the limits of uninsured or underinsured motor vehicle liability and expressly removing the prior allowance for a setoff. L. 2007, p. 1921 § 2, effective January 1, 2008.

ment of an action or arbitration of an *uninsured* motorist insurance claim until two years after the insured learns the tortfeasor is in fact an uninsured motorist must apply to the analogous situation of *underinsured* motorist claims. From this proposition, they reason that because their action against Guerra on the underlying bodily injury claim was timely filed, they were permitted to initiate an action for *underinsured* motorist coverage anytime within two years after learning that he was *underinsured*. They further reason that they could not know that Guerra was underinsured until the liability coverage claim against Hartford he had assigned to them was resolved in Hartford's favor in the federal action, and therefore the statute permitted them two years from April 2006 within which to file their action for underinsured motorist coverage against State Farm. This reasoning must fail for a number of reasons, not least because the statutory scheme simply does not admit of any reasonable interpretation conditioning the limitations period for underinsured motorist claims on the point at which the motorist in question is finally determined to be "underinsured" within the meaning of the statute.

■ ¶ 13 Statutes must be given meaning according to the intent of the legislature enacting them, as expressed in the language it has chosen to use in the statute itself. *Dept. of Transp. v. Gypsum Ranch Co.*, 244 P.3d 127, 131 (Colo.2010); *see also Holcomb v. Jan–Pro Cleaning Sys.*, 172 P.3d 888, 890 (Colo.2007); *Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 448 (Colo.2005). When the language of a statute is susceptible of more than one reasonable interpretation, and is therefore considered ambiguous, a number of intrinsic and extrinsic aids may be relied on to assist in determining which of these reasonable interpretations actually embodies the legislative intent. *Gypsum Ranch Co.*, 244 P.3d at 131. While the structure of section 13–80–107.5 may be complex, requiring careful parsing of its terms and conditions, and may in some regards even be susceptible of more than a single reasonable understanding, the language of the statute itself clearly and unambiguously conditions the two-year limitations period applicable to *uninsured* motorist claims on the insured's

awareness of the tortfeasor's lack of any applicable liability insurance whatsoever, and it just as clearly conditions the limitations period applicable to *underinsured* motorist claims on something other than the insured's awareness that the liability insurance coverage of the motorist in question falls within a range making him underinsured relative to the injured party initiating action.

¶ 14 Section 13–80–107.5 governs actions on both uninsured and underinsured motorist claims, but it does so in separate subsections, with each specifically made applicable to actions on claims of one kind or the other. Although both subsections exhibit largely parallel construction, with each providing for two different measures of the limitations period, each having the same formula for accrual, and each permitting a minimum filing period of three years from the point of accrual, the conditions of each measuring the alternate two-year limitations period differ both significantly and appropriately. The former clearly conditions its two-year period on the insured's awareness that the tortfeasor is uninsured while the latter, just as clearly, conditions its two-year period on the insured's reception of payment of a settlement or judgment on the underlying bodily injury liability claim against the underinsured motorist.

¶ 15 Nor could some claims fall within both categories and therefore be governed by both subsections. Although uninsured motorist coverage provided by an automobile insurance policy necessarily includes coverage for the driver of an underinsured motor vehicle, *see* § 10–4–609(4), the category of motor vehicle statutorily designated "underinsured" is limited to vehicles that are in fact insured, *id.* Therefore "uninsured motorist insurance claim(s)," to which subsection (1)(a) applies, and "underinsured motorist insurance claim(s)," to which subsection (1)(b) applies, are mutually exclusive. By definition, they cannot overlap and neither can be included within the other.

¶ 16 The plaintiff-petitioners, however, posit a conflict between the two subsections of section 13–80–107.5(1), or perhaps between subsection (1)(b) and subsection 10–4–609,

which they argue must be resolved by construing the statutory scheme to treat the limitations periods for both types of claim identically; and further, that disparate treatment of the limitations periods for these two kinds of actions would actually violate equal protection. There clearly can be no conflict between the two subsections of 13–80–107.5(1) because they are expressly made applicable to mutually exclusive actions. With regard to section 10–4–609, nothing in that statutory provision remotely supports the plaintiff-petitioners assertion that the purpose for mandating offers of coverage against injury by uninsured and underinsured motorists would be undermined by construing one subsection to measure its limitations period from the insured's awareness of the extent of applicable liability insurance coverage, but not the other. Even if that were the case, however, no principle of construction has been suggested that might lead to the conclusion that general language of purpose should control over specific statutes of limitations, much less that the specific requirements of (1)(a) should control over the equally specific requirements of (1)(b). *See Jan–Pro*, 172 P.3d at 890; *cf.* § 2–4–205, C.R.S. (2012) ("Special or local provision prevails over general.").

■ ¶ 17 With regard to the plaintiff-petitioners' assertion that the statute must be construed to avoid a potential violation of equal protection, *see generally, Adams Cnty. Sch. Dist. v. Heimer*, 919 P.2d 786, 790 (Colo. 1996) (holding that statutes should be construed so as to avoid questions of their constitutional validity), while the actual language of section 13–80–107.5(1)(b) is not susceptible of the interpretation urged by the plaintiff-petitioners in any event, nothing in the different limitation of actions conditions for uninsured and underinsured motorist actions implies any such violation. Uninsured and underinsured motorist claims are similar in that each involves an inadequately insured motorist, but (at least at all times applicable to this case) they are clearly different with respect to the information needed to determine whether the motorist in question has no liability insurance or is merely inadequately insured relative to a particular motorist with particular underinsured motorist coverage.

Whatever may have been the actual impetus for the legislature's choice of triggering conditions, attempting to avoid lengthy delays in filing, like the one for which the plaintiff-petitioners advocate under the circumstances of this case, would alone provide a rational basis for mandating different formulae for the two different actions.

■ ¶ 18 The plaintiff-petitioners also argue that they must have been given an opportunity to file after resolution of the Hartford case because by the very terms of State Farm's policy no underinsured motorist coverage existed or was available until Hartford's liability was determined. The phrasing of this argument, in and of itself, betrays not only a misreading of State Farm's policy but a failure to appreciate that the meaning of "underinsured motorist" and the extent of an insurance carrier's legal obligation to provide uninsured/underinsured motorist coverage are first and foremost matters of statutory mandate. State Farm's obligation under its uninsured/underinsured motorist coverage was clearly contingent upon not only the extent to which Guerra was covered by liability insurance, *see* § 10–4–609(4), but also the amount ultimately recovered by the plaintiffs from other liable parties and, if the lesser of the two, the damages sustained by the plaintiff-petitioners but not recovered, *see* § 10–4–609(5). To the extent Guerra's liability coverage was disputed by State Farm, that dispute was obviously subject to resolution by litigation, but nothing in the statutory scheme either purported to authorize the plaintiff-petitioners to delay proceeding against State Farm until these disputes had been finally resolved, or barred them from litigating the extent of Guerra's liability coverage in an action against State Farm rather than independently with Hartford. In fact, the plaintiff-petitioners did initiate a timely action against State Farm, but rather than litigating the question of Hartford's liability insurance coverage upon which their claim against State Farm was contested, they stipulated to a stay, permitting them to litigate that matter in the federal courts, and upon resolution of that question against them, they allowed their underinsured motorist claims

against State Farm to be dismissed for failing to prosecute.

■ ¶ 19 Because Guerra clearly had applicable liability insurance, section 13–80–107.5 governed the plaintiff-petitioners' claim for underinsured motorist coverage only through the provisions of subsection (1)(b), according to which the limitations period for commencing an action or arbitration of those claims was not extended by final resolution of the Hartford case for at least two separate but related reasons. Subsection (1)(b) permits filing within two years after the insured receives payment of the settlement or judgment on an underlying bodily injury liability claim if, but only if, the insured's claim was preserved by timely commencing an action against the underinsured motorist on that claim or receiving payment within the time for filing such an action. Not only did the Hartford action fail to result in the payment of any settlement or judgment, but even if it had, that action was not an action on the plaintiff-petitioners' underlying bodily injury claim against the underinsured motorist. Quite the contrary, it was an action by the underinsured motorist's assignees to recover on a claim of the underinsured motorist against a liability insurance carrier.

¶ 20 Secondarily, and more to the point, the plaintiff-petitioners argue that the instant action against State Farm was timely, not because it was filed within two years of the resolution of the Hartford action, but rather because they were entitled to file until the passage of two years following payment of their Stipulated Confessed Judgment against Guerra. They reason that by filing a timely action against Guerra that resulted in a judgment on their underlying bodily injury liability claim against him, they extended their time for initiating an action for underinsured motorist benefits until after their reception of payment of the entire judgment in that action; and because they stipulated with Guerra for a confessed judgment of $1,558,707.78 but settled with him for less than the full amount and have not subsequently recovered the remainder from anyone else, the period for filing has still not yet run. In light of their settlement with the underinsured mo-

torist, however, this theory is equally unavailing.

¶ 21 In enacting section 13–80–107.5 in 1994, the legislature not only resolved a number of uncertainties and debates surrounding the appropriate characterization of uninsured/underinsured motorist claims for purposes of a limitations period, *see generally,* Jeffrey A. Kelso & Matthew R. Drevlow, *When Does the Clock Start Ticking? Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims,* 47 Drake L.Rev. 689 (1999), but also provided injured motorists in this jurisdiction with quite favorable terms for initiating actions on such claims. Colorado's statute not only provides the insured a term of years following the injury within which to file, much like a tort claim, but also provides him with a period of time after he settles or reaches judgment against the tortfeasor and thus becomes aware of an uncompensated loss. In fact, subsection (1)(b) does not merely allow filing within two years after a settlement of judgment is reached; it allows an insured to wait to file until after he has actually received payment of that settlement or judgment. The statute, however, calculates this alternate period for filing only from the payment of a settlement or judgment of a properly preserved claim against the underinsured motorist.

¶ 22 By timely commencing an action against Guerra on their underlying bodily injury claims, at least some of the plaintiff-petitioners clearly preserved their claims against the underinsured motorist, potentially permitting them to file for underinsured motorist benefits more than three years after accrual of their claims. Under this alternate method of calculation, however, their claims could nevertheless be filed no later than two years after receiving payment of the settlement or judgment on those preserved underlying bodily injury liability claims against the underinsured motorist. In May 1996, the plaintiffs settled their action against Guerra, the underinsured motorist, for a confessed judgment, payment of the limits of Allstate's liability coverage, and the assignment of any claims Guerra might have against Hartford,

all in exchange for an agreement that the remainder of the confessed judgment could not be enforceable against the underinsured motorist. At that point, the action against the underinsured motorist was settled, and upon payment of Allstate's liability coverage, the insureds had received payment of the settlement of the underlying bodily injury liability claim against the underinsured motorist, and the two-year period commenced.

¶ 23 In measuring the two-year period from payment of a settlement or judgment, the statute clearly contemplates either a settlement of the claim in lieu of a judgment or a settlement of the judgment against the underinsured motorist. It would just as clearly be unreasonable to interpret the statute as reserving commencement of the two-year period until payment of a full judgment that had already been settled, rather than payment of the settlement itself. Whether or not a confessed judgment with a covenant not to execute against the underinsured motorist, like that presented here, could ever serve as the basis for a claim for liability coverage, *cf. Nunn v. Mid–Century Ins. Co.*, 244 P.3d 116 (Colo.2010) (approving assignment of bad faith claims under limited circumstances); *Old Republic Ins. Co. v. Ross*, 180 P.3d 427 (Colo.2008) (same), to the extent it represents a judgment on "the underlying bodily injury liability claim against the underinsured motorist," § 13–80–107.5(1)(b), it has been settled and payment of the settlement must mark the commencement of the two-year period.

¶ 24 The plaintiff-petitioners characterize the court of appeals judgment as measuring the two-year period from a partial payment of a settlement or judgment, but we understand the court of appeals to have held merely that payment of the settlement with Guerra disposed of the only claim against the underinsured motorist preserved as required by the statute. That holding speaks not at all to the timeliness of an action for underinsured motorist coverage following the partial satisfaction of an unsettled judgment or, if possible, the payment of a settlement or judgment of a separate but equally preserved bodily injury liability claim against the underinsured motorist. Whether such actions might be considered timely under the two-year provision of subsection (1)(b) is not before us in this appeal and is a question better left to circumstances, should they arise, that require its resolution.

¶ 25 The plaintiff-petitioners also assert that they are entitled to demand arbitration under the applicable policies and that the court of appeals erred in finding that they made no timely request for arbitration. In addition, they assert that if their action was untimely within the specific terms of section 13–80–107.5, this court should find that the statute of limitations was equitably tolled by State Farm's demand that they exhaust all liability policies before being entitled to underinsured motorist coverage. Because neither of these issues was fairly included in the grant of certiorari by this court, neither will be addressed.

### III.

¶ 26 Because the plaintiffs failed to file this action or demand arbitration of their underinsured motorist claim within either three years of the accrual of their cause of action or within two years after receiving payment of a settlement or judgment on an underlying bodily injury liability claim that had been preserved as prescribed by the statute, the judgment of the court of appeals is affirmed.

JUSTICE HOBBS dissents.

JUSTICE HOBBS, dissenting.

¶ 27 I respectfully dissent. I would reverse the judgment of the court of appeals. The undisputed facts in this case lead to the conclusion that the Pham Parties were not required to bring an underinsured motorist claim against State Farm until the Hartford case became final in 2006, which commenced the two-year limitations period in section 13–80–107.5(1)(b). The Pham Parties filed their action within the applicable limitations period. The facts alleged by the Pham Parties support an action based on State Farm's duty to investigate and pursue the Pham Parties' claims in good faith pursuant to public policy and *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177 (Colo.2005).

I.

¶ 28 On December 3, 1995, Erwin Guerra and a co-worker were returning to company-provided apartments after leaving a night-club. Guerra, who was legally intoxicated, drove through a red light and collided with a vehicle driven by Diep Pham, injuring him and all five of his passengers. Pham died from his injuries four months later. Guerra was living in Aurora on a temporary assign-ment from Virginia, the base of his employer, OSP Consultants ("OSP"). Guerra's vehicle was insured for liability under two separate auto policies: (1) his own Allstate policy, providing liability coverage of $25,000 per person and $50,000 per accident, and (2) OSP's Hartford commercial auto policy, which provided coverage for "any auto" while used in either the "business or personal af-fairs" of OSP, up to $1 million dollars.

¶ 29 Pham's automobile was owned by Pham Enterprises and insured by State Farm Insurance Company, which provided uninsured ("UM") and underinsured ("UIM") coverages with policy limits of $100,000 per person and $300,000 per accident. Three of the other passengers had UIM policies with State Farm, and two others had policies with Liberty Insurance.

¶ 30 In February 1996, Pham's estate and the five surviving passengers filed separate actions against Guerra, OSP, and State Farm to obtain individual awards on behalf of each of State Farm's and Liberty's insureds.[1] At the end of March, State Farm paid $75,000 in UIM benefits to Pham's estate. Thereafter, the six individual cases were consolidated at the request of the insurance carriers in the Denver District Court.

¶ 31 In April 1998, after Hartford denied coverage and refused to provide Guerra with defense, Guerra's Allstate counsel offered its liability limit in the amount of $50,000 and requested an agreement where Guerra stipu-lated to judgment being entered against him in the amount of $1,558,707.78. State Farm and Liberty acquiesced to the settlement

with Allstate, although State Farm did not agree to be bound by the judgment, and Allstate paid its $50,000 in liability coverage to the Pham Parties in May. As a condition of the settlement, the Pham Parties agreed not to enforce the judgment against Guerra in exchange for Guerra's assignment to them of any claims he might have against Hart-ford.

¶ 32 The Pham Parties then filed a lawsuit against Hartford in the federal district courts of Colorado and Virginia, seeking the full policy limit of $1 million based on several breach of contract theories. The Pham Par-ties also requested that State Farm and Lib-erty pay their UIM benefits and assert a subrogation lien against any liability recov-ery that Pham Parties might later obtain against Hartford. State Farm refused to pay, and Liberty followed suit. Significantly, State Farm claimed it was not required to pay UIM benefits until the Pham Parties exhausted their liability claims against Hart-ford.[2] The Pham Parties then filed a second action against State Farm and Liberty in Colorado state court in December 1998, seek-ing UIM benefits and arbitration, claiming that State Farm owed additional UIM bene-fits because Guerra had additional liability insurance under Hartford, who was denying coverage. Pham Parties later amended this complaint to include bad faith and willful and wanton breach of contract claims for refusing to pay UIM benefits after acquiescing to Guerra's stipulated judgment. On April 9, 1999, the UIM claims of the passengers of the accident were dismissed because the court concluded they were already being ad-judicated in the 1996 case. Pham's estate, each of his parents' bad faith and willful and wanton breach of contract claims against State Farm and Liberty remained in effect in the 1998 case, as did their UIM claim, which sought UIM benefits in addition to the $75k State Farm had earlier paid.

¶ 33 In November 2000, in light of the pending federal Hartford lawsuit, the Pham

---

1. The Pham Parties first requested arbitration, but State Farm claimed its UIM policy required them to secure a judgment against Guerra in order to receive payment of UIM benefits.

2. The State Farm insurance contract stated, in pertinent part, *"[t]here is no coverage until the limits of all bodily injury ... policies that apply have been used up by payment of judgments or settlements."* (Emphasis added).

parties requested a status conference to determine how the case should proceed against the insurance companies. In January 2001, the district court ordered a stay on both the 1996 and 1998 cases pending resolution of the federal case determining Hartford's liability, but allowed the insurance companies to file partial summary judgment motions on the bad faith and willful and wanton breach of contract claims. The insurance companies filed partial summary judgment motions, and the court granted them. After the summary judgment order, the only claim remaining against State Farm was a claim for UIM benefits by the three Pham parties. Subsequently, the Pham Parties appealed the summary judgment order.

¶ 34 In January 2003, the court of appeals released its decision, upholding the district court's grant of partial summary judgment. State Farm had argued to the court that its obligations to pay UIM benefits were unknown until the claims against Hartford were full resolved:

> Defendants further contend that the total amount cannot be determined until the Hartford suit is resolved, because Hartford may be found liable. *If Hartford is found liable and ordered to pay the unsatisfied judgment entered against Guerra, defendants will not have to pay any UIM benefits because their UIM liability is limited to the difference between the amount plaintiffs receive from Guerra's liability insurers and the UIM policy limits.* Defendants do not refute that they may have to pay UIM benefits if Hartford is not found liable; they simply contend that, until the Hartford case is resolved, their obligation to pay UIM benefits remains unknown and unliquidated under § 10-4-609(5).

*Pham v. State Farm Mut. Auto Ins. Co.*, 70 P.3d 567, 573 (Colo.App.2003) (emphasis added). The court of appeals concluded that State Farm's reliance on its interpretation of section 10-4-609(5), C.R.S. (2012), and existing case law was reasonable and State Farm did not act in bad faith in denying UIM benefits until the resolution of the Hartford case. *Id.* at 574-75. Thus, the only claim

remaining in the 1998 case was the Pham parties' UIM claims against State Farm.

¶ 35 At this point, nearly eight years since the accident, it was still unclear whether State Farm would be required to pay UIM benefits because Guerra's liability coverage through Hartford had yet to be determined. However, as the court of appeals stated, State Farm was aware that it might be required to pay UIM benefits if Hartford was not found liable, and it did not refute this assertion. The Pham Parties then focused their efforts on the Hartford litigation over the next several years, and the Colorado cases remained stayed.

¶ 36 On April 4, 2006, the federal district court of Colorado dismissed the case against Hartford, and the stay on the state cases expired. State Farm attempted to contact the Pham Parties' counsel to determine how they planned to proceed, but their counsel had apparently moved and the letters did not reach them. State Farm then moved to dismiss the 1998 case for failure to prosecute, and the court dismissed the case with prejudice in February 2007. Likewise, State Farm moved to dismiss the 1996 case for failure to prosecute, and the court granted the motion in April 2007. However, the court dismissed the 1996 case *without* prejudice, stating that the case had been justifiably delayed for several reasons, including that the Pham Parties were required to exhaust all other claims before pursuing claims against State Farm per State Farm policy.

¶ 37 The Pham Parties requested payment of UIM benefits, and State Farm continued to refuse to pay. The Pham Parties filed this action on March 19, 2008, asserting a negligence claim and loss of consortium against Guerra, and claims of breach of contract and bad faith breach of contract for failure to pay UIM benefits against State Farm, the same claims raised in the 1996 and 1998 cases. Because the earlier cases had been dismissed, State Farm argued to the district court that the Pham Parties were statutorily barred from bringing their UIM claims under section 13-80-107(1)(a) and (b). The district court agreed, granting State Farm's motion to dismiss and concluding that the applicable statute of limitations had run as of

May 2000 and the doctrine of claim preclusion barred the claims. The court of appeals affirmed, concluding—as does the majority—that the two-year limitations period in section 13–80–107.5(1)(a) and (b) barred Pham Parties UIM claims after May 2000, two years after Pham Parties accepted payment from Allstate.

## II.

¶ 38 I respectfully dissent. I would reverse the judgment of the court of appeals. The undisputed facts in this case lead to the conclusion that the Pham Parties were not required to bring an underinsured motorist claim against State Farm until the Hartford case became final in 2006, which commenced the two-year limitations period in section 13–80–107.5(1)(b). The Pham Parties filed their action within the applicable limitations period. The facts alleged by the Pham Parties support an action based on State Farm's duty to investigate and pursue the Pham Parties' claims in good faith pursuant to public policy and *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177 (Colo.2005).

·¶ 39 The majority's construction of the underinsured motorist limitations provision in section 13–80–107.5(1)(b) would unnecessarily force insured injured motorists to prematurely bring UIM claims as a matter of course. In this case, for example, the Pham Parties did not reliably know whether Guerra was an underinsured motorist until the resolution of the Hartford case in 2006. The majority views this crucial fact as inconsequential and would apply the two-year limitations period from the moment Allstate paid the Pham Parties liability benefits in May 1998, eight years before Guerra was determined to be underinsured. Forcing victims of an accident to bring premature UIM claims when it is unclear whether the tortfeasor is actually underinsured would promote piecemeal litigation, contrary to public policy. *See State Farm Mut. Auto Ins. Co. v. Broadnax*, 827 P.2d 531, 537 (Colo.1992) (concluding insurance statutes designed avoid piecemeal litigation).

¶ 40 As the majority acknowledges, State Farm's obligation under its UIM coverage was contingent upon more than just the extent to which Guerra was covered by liability insurance, but also *the amount ultimately recovered by the plaintiffs from other liable parties and, if the lesser of the two*, the damages sustained by the Pham Parties but not recovered. Maj. op. ¶ 18 (emphasis added). Thus, State Farm's liability, if any, was conditioned on whether the Pham Parties could recover from Hartford, Guerra's other insurer. Appreciating this, it seems clear that the Pham Parties could not, and should not be forced, to bring an underinsured motorist claim until Guerra was actually determined to be underinsured, in April 2006.[3] At this time, the limitations period began running, giving the Pham Parties until April 2008 to bring a timely claim against State Farm for UIM benefits, which they did, in March 2008.

¶ 41 The Pham Parties' claim for UIM benefits could not accrue until it was determined that Guerra was underinsured, and the cause of action ripened. A cause of action is commonly understood to accrue when a suit may be maintained thereon. *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 21, 287 P.3d 842; *Jones v. Cox*, 828 P.2d 218, 224 (Colo.1992). Section 13–80–107.5(1)(b) states, "[a]n action or arbitration of an 'underinsured motorist' insurance claim ... shall be commenced or demanded by arbitration demand *within three years after the cause of action accrues*." (Emphasis added). The statute then specifies that a "cause of action accrues after both the existence of the death, injury, or damage giving rise to the claim and the cause of the death, injury, or damage are known or should have been known by the exercise of reasonable diligence." § 13–80–107.5(3), C.R.S. (2012). The language in this provision provides that both the "existence" and the "cause" of the injury or damage must be known before an UIM

---

**3.** The true issue appears to be whether section 13–80–107.5(1)(b) even applied before 2006, when Guerra was found to be underinsured. The mere possibility, rather than fact, that Guer-

ra was underinsured should not trigger the start of the statute's limitations period. I would conclude that section 13–80–107.5(1)(b) did not apply until April 2006.

action accrues. However, the victim must also know that the tortfeasor is underinsured before he can bring a UIM suit that he can maintain. Otherwise, there is no proper basis for the claim and a court can only stay the case, such as the district court did, pending the final resolution of coverage. Thus, a UIM claim cannot accrue until there was a proper basis for the claim, including a final determination that Guerra was underinsured through OSP's Harford coverage.[4]

¶ 42 Unlike the majority, I do not believe the Pham Parties' 2001 stipulation to stay the 1996 and 1998 cases while pursuing a federal court claim against Hartford—rather than continuing to litigate against State Farm in state court—should accrue to their detriment. Maj. op. ¶ 18. The Pham Parties followed a litigation course that State Farm contractually required them to follow. State Farm refused to pay until Hartford's liability was determined, a decision the court of appeals concluded was reasonable in 2003, and a decision this court subsequently denied certiorari on. The Pham Parties should not be punished for attempting to work with State Farm and the courts to resolve their case; nor were the dismissals of the 1996 and 1998 cases dispositive, as the majority concludes. Because the statute of limitations could not run until Guerra was found underinsured, the Pham Parties claim was timely.

¶ 43 The majority's conclusion goes against good public policy in regards to UI/UIM claims. See Brekke, 105 P.3d at 188, 189–90 ("[P]ublic policy impose[s] a high standard of conduct on an insurance provider in its interaction with its insured;" "[P]ublic policy ... protects the insured from being forced to traverse undue procedural hurdles and relitigate matters prior to a recovery under a

UM policy."); DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 174 (Colo.2001) (citing the General Assembly's UM/UIM public policy "to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists," and "[b]ecause of the important policy behind UM/UIM insurance to protect persons from the often-devastating consequences of motor vehicle accidents, we have concluded that great weight must be accorded this legislative intent"). In Brekke, we examined the relationship between an insurance carrier and its insured, describing it as a "quasi-fiduciary" relationship and unlike ordinary bilateral contracts. 105 P.3d at 189–90. Because an insurance carrier becomes an adversary to its insured in an UI/UIM context, public policy mandates a higher standard of conduct for the insurance carrier, as a conflict of interest arises. Id. at 188; Peterman v. State Farm Mut. Auto Ins. Co., 961 P.2d 487, 494 (Colo. 1998) ("We recognize that the insurer becomes almost adversary to its own insured in the context of uninsured motorist coverage, but that conflict does not vitiate the underlying contractual and quasi-fiduciary duty that the insurer owes its insured."); see also Lazar v. Riggs, 79 P.3d 105, 107 (Colo.2003). As such, the insured has a contractual duty to cooperate and report to the insurance provider, while the insurance carrier has a duty to investigate and adjust a claim in good faith. Brekke, 105 P.3d at 189.

¶ 44 State Farm's conduct was inconsistent with the heightened standard we have applied in UI/UIM cases.[5] State Farm denied UIM benefits while forcing the Pham Parties to pursue Hartford for settlement payments

---

4. The unique circumstances in this case—where Guerra's car was covered through his employer's insurance company for both "business and personal affairs" while on temporary assignment in Denver, and that he was injured while driving back from dinner with a co-worker to company-provided housing–provide the basis for this claim because there was genuine uncertainty whether Guerra would be covered through his employer's coverage. Were the facts to clearly point to the Pham Parties for raising frivolous claims or sitting on their rights while Guerra's underinsured status was evident, then the majority's argument would be persuasive.

5. State Farm's claim that it contacted the Pham Parties' counsel by sending two letters regarding future litigation actions subsequent to the 2006 dismissal of the Hartford case—which apparently were unanswered because Pham Parties' counsel had moved— is a minimal attempt that in my view, does not meet good-faith requirements. A phone call, email, web search, or any other simple investigative inquiry into a current address would have been appropriate, especially given the delay State Farm had caused in the litigation.

until, finally, State Farm claimed that the Pham Parties were statutorily barred from bringing their UIM claims once State Farm was the sole insurance carrier with potential liability. This is the classically unjust catch–22 mousetrap triggered to defeat a victim's claim, no matter its merits.

¶ 45 In sum, the facts of this case support the conclusion that the Pham Parties filed a timely claim for UIM benefits against State Farm in March 2008. Reading section 13–80–107.5(1)(b) to apply in instances when it is unclear whether a motorist is underinsured may ultimately lead to victims of an automobile accident bringing premature UIM claims in every injured motorist action, and/or insurance companies extending litigation beyond the limitations period and injured motorists are unable to collect UIM benefits. Neither of these results is consistent with public policy ensuring compensation for individuals injured by underinsured motorists.

¶ 46 Accordingly, I respectfully dissent.

